739 F.2d 252
 84-2 USTC P 9639
 UNITED STATES of America, Plaintiff,
v.
Allen D. FRIEDMAN, Defendant and Third-Party Plaintiff,
v.
James C. LEWIS and National Homes Construction Corporation,
Third-Party Defendants.
UNITED STATES of America, Cross-Claim Plaintiff-Appellee,
v.
NATIONAL HOMES CONSTRUCTION CORPORATION, Cross-Claim
Defendant-Appellant.
 No. 83-1999.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 28, 1984.
Decided July 10, 1984.
 
 Gregory E. Norwell, Defrees & Fiske, Chicago, Ill., for cross-claim defendant-appellant.
 Wynette J. Hewett, Atty. Tax Div., Tax Div., Dept. of Justice, Washington, D.C., for cross-claim plaintiff-appellee.
 Before WOOD, CUDAHY, and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 The district court in this case held National Homes Construction Corporation liable for unpaid withholding taxes pursuant to section 3505(a)[1] of the Internal Revenue Code of 1954. Under section 3505(a), any third party who pays wages directly to the employees of an employer is liable for the taxes required to be withheld from those wages. This appeal raises the issue of whether the government's claim against National Homes is barred either by the six-year statute of limitations contained in section 6502(a)(1)[2] or by the failure to provide National Homes with notice of assessment as required by section 6303(a).[3] For the reasons stated below, we affirm.
 
 I.
 
 2
 During 1972 and 1973, National Homes was the general contractor on a construction project on the west side of Chicago. It subcontracted the masonry work to James C. Lewis, who at that time was doing business as a sole proprietor. As the work progressed on the project, Lewis entered into a partnership, called the L & N Company, with Allen D. Friedman. Lewis was the general partner, and Friedman was the limited partner. The partnership agreement provided that the term of the partnership was indefinite and would conclude on completion of the subcontract. The subcontract with National Homes was amended to show L & N Company as the subcontractor on the project.
 
 
 3
 In January 1973, the partnership experienced cash flow problems, and Lewis was jailed for a brief period of time for an unrelated offense. During the first week of February 1973, Friedman met with representatives of National Homes and told them that he was withdrawing from the partnership. Friedman testified at trial that he also notified Lewis that he would have nothing further to do with the partnership. National Homes later ordered Friedman off the construction site. Lewis and Friedman never entered into a written termination of the partnership.
 
 
 4
 L & N Company continued work on the subcontract. During February 1973, Lewis corresponded with National Homes regarding payment of the L & N payroll without indicating that the partnership had been terminated. The payroll records show that National Homes paid employees from L & N Company, without indicating any change in the status of the entity.[4] From February through June of 1973, National Homes paid the wages of the masonry workers directly to them. The wage payments to the workers were net of the taxes required to be withheld; however, the taxes were never remitted to the government. Withholding tax returns for L & N Company were not filed at the end of the first and second quarters of 1973.
 
 
 5
 In July 1973, Mr. Zuraff, an Internal Revenue Service (IRS) revenue officer, was assigned to the delinquent account. In performing his investigation, Zuraff spoke with Lewis, Friedman, and an agent of National Homes. Zuraff testified that he was aware in summer 1973 that Friedman was "contending" that he had dissolved the partnership the previous February. In August 1973, Zuraff and Lewis prepared the necessary withholding tax returns. Those returns identified the partnership as the employer; Lewis supplied the employer identification number of the partnership for the returns. Lewis signed and submitted the returns. In accord with these returns, an assessment was made in December 1973 against the partnership and against Lewis and Friedman as individuals.
 
 
 6
 In April or May of 1974, Zuraff requested an opinion from IRS legal counsel as to whether the partnership had been dissolved in February 1973. In 1977, the IRS legal counsel advised that the partnership had been terminated in the first quarter of 1973. Zuraff requested Lewis to file new returns identifying himself as the employer. Lewis filed returns reflecting that the masonry subcontract work was performed by his sole proprietorship. Zuraff sent Form 4219, "Statement of Liability of Lender, Surety or Other Person for Withholding Taxes Under Section 3505 of the Internal Revenue Code" to National Homes. An assessment was made against Lewis individually. The assessment aagainst the partnership then was abated for the relevant period.
 
 
 7
 In 1981, the United States sued National Homes for unpaid withholding tax liabilities for part of the first quarter and the entire second quarter of 1973.[5] Following a bench trial, the district court found National Homes liable. The court found that the partnership was terminated in February 1973.[6] The court also found that the IRS did not know until 1977 that Lewis, and not the partnership, was the proper taxpayer. The six-year statute of limitations began to run in 1977 with the assessment against Lewis. Thus, an assessment made in 1981 was within the statute of limitations. Finally, the court found that National Homes had notice of its liability for the unpaid taxes.
 
 
 8
 On appeal, National Homes raises two issues. First, it argues that the statute of limitations began running in 1973 when the original assessment was made, so that the United States' failure to file suit against it until 1981 bars this action. Its argument is based on two challenges to the district court's findings of fact. It alleges that the court erred in finding that the partnership terminated in February 1973; a partnership does not terminate until there has been a winding up of partnership affairs, and there was no winding up here until June or July of 1973. Thus, the partnership is the correct taxpayer and the returns filed in 1973 triggered the running of the statute. National Homes also alleges that the government had all the relevant facts in July 1973 to identify the proper taxpayer; a return filed in good faith by the wrong entity is sufficient to start the running of the statute of limitations against the correct entity. Second, National Homes argues that section 6303(a) requires that notice of the assessment against the employer be given to the lender within sixty days after the assessment. Here the notice was sent several months prior to the October 1977 assessment against Lewis. Thus, it argues, that notice was not timely and this suit is barred.
 
 
 9
 The United States argues that the district court correctly found that the partnership was terminated in February 1973. The partnership was bankrupt and thus there was no need for a winding up. The government further argues that the IRS did not have all the facts necessary to determine the correct identity of the employer in 1973. Finally, the government maintains that the notice of liability given before the assessment was sufficient.
 
 II.
 
 10
 National Homes' argument that the statute of limitations began running in 1973 is based on two factual assertions: that the partnership was not terminated in February 1973; and that the government knew all the facts necessary to identify the correct employer in 1973. The district court rejected both of these factual assertions.
 
 
 11
 This court can only set aside the findings of fact of a district court when those findings are clearly erroneous. Fed.R.Civ.P. 52(a). The standard of review is clear. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This court cannot reweigh the evidence; our inquiry is whether the record contains substantial evidence to support the findings. DePass v. United States, 721 F.2d 203, 205 (7th Cir.1983).
 
 
 12
 Under Illinois law, a partnership is not terminated until the winding up of partnership affairs is complete. Ill.Rev.Stat. ch. 106 1/2, Sec. 30. National Homes argued to the district court that the partnership had not been terminated because there had been no winding up. The district court rejected this in finding that the partnership had been terminated. After carefully reviewing the record, we cannot say that this finding was clearly erroneous. It appears from the record that Lewis's business organizations were somewhat informal. The testimony indicates that Lewis's original entity, Jet Building Corporation, was never formally incorporated but rather was a sole proprietorship. L & N Company, although intended by Lewis and Friedman to be a limited partnership, never filed a certificate of limited partnership as required by Illinois law.[7] After February 1973, Lewis variously referred to himself as the "president" or "owner" of L & N Company. See Government Ex. 41 & 44. The district court in its opinion characterized Lewis as "an enterprising workman ... who handled his construction work through business structures through which he could borrow money." Memorandum Opinion and Order at 2. After Friedman withdrew, Lewis simply reverted to carrying on the masonry business alone. Furthermore, Friedman testified that L & N Company was "bankrupt." The district court found Friedman's testimony credible. To find that the partnership here was not terminated would elevate form over substance. Under these very limited circumstances and for the limited purposes presented here, the lack of a formal winding up of partnership affairs does not preclude a finding that the partnership has been terminated.
 
 
 13
 The finding that the government did not know who the proper taxpayer was until 1977 also is not clearly erroneous. Zuraff, the IRS revenue officer responsible for collection of this account, testified that in 1973 he did not have sufficient information to determine the true identity of the employer and that he did not recall having information in 1973 that National Homes was paying net wages. The district court found this testimony credible. A district court's finding based in part on the credibility of witnesses is entitled to great deference, and we decline to overturn the finding here.
 
 
 14
 Thus, the statute of limitations did not begin running until the assessment in 1977 and this suit is timely. Because we hold that the government did not have sufficient information as to the correct taxpayer in 1973, we express no view on National Homes' argument that a return filed in good faith by the wrong entity that discloses all necessary information constitutes a return of the correct taxpayer sufficient to start the running of the statute of limitations.
 
 
 15
 We turn to National Homes' contention that the government's failure to provide notice within sixty days after the assessment against Lewis individually bars this suit. In United States v. Associates Commercial Corp., 721 F.2d 1094 (7th Cir.1983), this court held that section 6303(a) requires that persons liable under section 3505 for unpaid withholding taxes must be given notice of the assessment against the employer and that failure to provide such notice precludes liability. The court found that notice was required to ensure that persons liable under section 3505 would have prompt notice of the government's potential claim; the court thus was concerned with protecting the person liable under section 3505. Where, as here, the person liable received actual written notice of its potential liability shortly before the assessment, including the amount of that liability, those concerns are not relevant; the person is fully protected. Furthermore, the regulation pursuant to section 6303 provides that "the failure to give notice within 60 days does not invalidate the notice." Treas.Reg. Sec. 301.6303-1(a) (1954). Thus, it is clear that section 6303 is to be given a practical and not technical construction. We hold that the failure to provide notice within sixty days after the making of an assessment will not bar suit under section 3505 where the government has provided complete notice shortly before the making of the assessment.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Section 3505(a) provides:
 Direct Payment by Third Parties.--
 For purposes of sections 3102, 3202, 3402, and 3403, if a lender, surety or other person, who is not an employer under such sections with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, employed by one or more employers, or to an agent on behalf of such employee or employees, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld from such wages by such employer.
 
 
 [2]
 Section 6502(a)(1) provides:
 Length of Period.--Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
 (1) Within 6 years after the assessment of the tax,
 * * *
 
 
 [3]
 Section 6303(a) provides:
 General Rule.--Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.
 
 
 [4]
 National Homes points out that on March 2, 1973, Friedman sent a letter to L & N's bank regarding the partnership's bank account. See Government Ex. 45. In the letter, Friedman asked that credit be made to the account for certain checks that did not bear his signature. That letter, however, refers to the February bank account statement. Thus, it is possible that the checks referred to were written prior to Friedman's withdrawal from the partnership in early February
 
 
 [5]
 The United States originally sued Friedman for unpaid withholding taxes for the fourth quarter of 1972 and a portion of the first quarter of 1973. Friedman filed a third-party action against Lewis and against National Homes, seeking indemnity for any liability of his. The United States then filed a crossclaim against National Homes for unpaid withholding taxes for a portion of the first quarter and the second quarter of 1973. Lewis died before trial. Following trial, judgment was entered against Friedman on both the United States' claim and the indemnity claim, and against National Homes on the crossclaim. Friedman has not appealed
 
 
 [6]
 In its Memorandum Opinion and Order, the district court actually used the word "dissolved," rather than "terminated," in referring to the partnership's status as of February 1973. Both parties agreed at oral argument before this court that the district court's use of the word "dissolved" was inadvertent
 
 
 [7]
 The testimony at trial indicates that there was some confusion as to whether L & N Company was in fact a limited partnership or a joint venture. See Friedman Tr. at 198-225