**UNITED STATES of America,**
**Plaintiff,**

v.

**Lawrence H. STEPHENS, Defendant.**

**Nos. CIV.S–01–1076WBS/DAD,**
**CIV.S–98–920WBS/DAD.**

United States District Court,
E.D. California.

Dec. 10, 2001.

G. Patrick Jennings, U.S. Dept. of Justice, Tax Div., Washington, DC, for plaintiff.

Andrew J. Weill, Law Offices of Andrew J. Weill, San Francisco, CA, for defendants.

## MEMORANDUM AND ORDER

SHUBB, District Judge.

Plaintiff United States of America brought this lawsuit to reduce federal tax

assessments against defendant Lawrence H. Stephens to judgment. Defendant moves for summary judgment on the grounds that the United States' claim is barred by the statutes of limitations in Sections 6502(a) and 6501(a) of the Internal Revenue Code. The United States brings a cross motion for partial summary judgment, asking the court to adjudicate the amount of the tax liability at issue.

## I. *Factual and Procedural Background*

In 1986 and 1987, a business operated as Silver Creek Construction Co. failed to pay employment taxes under I.R.C. § 3111 ("FICA") and I.R.C. § 3301 et. seq. ("FUTA"). (United States Compl. ¶ 10.) This lawsuit concerns Silver Creek's liabilities for five tax periods: (1) the quarter ending December 31, 1986; (2) the quarter ending June 30, 1987; (3) the quarter ending September 30, 1987; (4) the year ending December 31, 1986; and (5) the year ending December 31, 1987. (United States Compl. ¶¶ 6, 7).

The United States claims that defendant was a general partner in the BDS partnership, which allegedly operated Silver Creek starting in 1987. (Pl.'s Opp'n at 5.) Prior to 1987, Silver Creek was owned by Robert Davis and then by the Robert D. Davis and John L. Reisenger partnership. (*Id.*) Allegedly, BDS acquired an 80% interest in Silver Creek in June of 1987 and assumed the employment tax liabilities in question. (*Id.* at 2.) The United States contends that defendant, as a general partner of BDS, is personally liable for the partnership's debts. (*Id.* at 2.)

According to documentation submitted by the parties, tax returns for the periods in question were initially filed on (1) January 17, 1990 (Weill Decl. Ex. L at 3); (2) July 31, 1987 and August 31, 1987 (Jennings Decl. Ex. E); (3) December 12, 1987 (Weill Decl. Ex. O); (4) June 8, 1987 (Weill Decl. Ex. L at 4); and (5) June 6, 1988 (Weill Decl. Ex. H), respectively. These tax returns identify only Robert D. Davis as the employer liable for all relevant tax periods except the quarter ending September 30, 1987. The return filed for that quarter names the "Robert D. Davis and John L. Reisenger, Ptrs" as the taxpayer. (Weill Decl. Ex. O). None of the relevant returns filed in 1987 and 1990 identify BDS as the employer.

The IRS assessed liabilities within two years of the filing of these returns. The dates of these assessments are undisputed. They are, respectively: (1) January 16 or 17, 1990 (Weill Decl. Ex. L at 3); (2) October 5, 1987 (Weill Decl. Ex. N); (3) May 8, 1989 (Weill Decl. Ex. O); (4) July 20, 1987 (Weill Decl. Ex. L at 4); and (5) June 6, 1988 (Weill Decl. Ex. H).

There is some confusion about exactly whom these taxes were assessed against. The parties have submitted two Certificates of Payments and Assessments to the court. These certificates provide information for all relevant tax periods except for FUTA taxes for 1987. From these certificates, it appears that taxes were assessed in 1987 and 1990 against "Robert. D. Davis"[1] (who is identified in the IRS's records by Employer Identification Number 77–099582 ("EIN")), "Robert D. Davis & John L. Reisenger Ptrs" (EIN 77–0306265), and "Davis, et al, Ptr" (EIN 77–0151987).[2]

The IRS officer responsible for these assessments was Randy Reece. (Reece

---

**1.** 77–0099582 is the EIN for Robert D. Davis's sole proprietorship. Some of the assessments name Robert D. Davis and John L. Reisenger as the employer under this EIN.

**2.** Defendant contends that these assessments were made against BDS. This assertion is contradicted by the certificates of Assessments and Payments, none of which identify BDS as the taxpayer. Nor is it undisputed, as

Decl. ¶ 2.) According to Reece, when he was examining Silver Creek's tax liabilities he was substantially confused about who owned the company. (*Id.* ¶ 7.) He attributes his confusion various factors, such as: Robert D. Davis using different Employer Identification Numbers ("EINs"), which the IRS uses to create and track employer accounts; Silver Creek's failures to file tax returns on time; Silver Creek's apparent split into two businesses; and the attempt of Glenn D. Bell, a partner in the BDS partnership, to continue the business under a different name. (*Id.* ¶ 7.)

After assessing the taxes in question, Reece filed numerous notices of federal tax lien in January of 1990. (*Id.* ¶ 9.) Liens were issued against Nightengale Development Company; Glenn D. Bell; Jeanette Bell, Robert Davis and BDS, a General Partnership; Glenn D. Bell; Lawrence Stephens; Ray Nieves; Robert Davis; and BDS, a General Partnership. (Weill Decl. Ex. E.) The leins are ambiguous as to whether BDS, a General Partnership, and Stephens are listed as taxpayers or as nominees (Weill Decl. Ex. A–J).

Meanwhile, Reece contacted defendant, who told him that the BDS partnership was never formed and never bought Silver Creek; Davis, on the other hand, told Reece that BDS was formed and did buy Silver Creek. (Reece Decl. ¶ 12.) According to Reece, he suspected Davis was telling the truth, but still remained unclear about who owned Silver Creek. (*Id.*) Nevertheless, Reece applied for a new EIN to be assigned to BDS in November of 1990.

■ In October of 1991, the ownership of Silver Creek was resolved in the bankruptcy trial of Glenn Bell.[3] (*Id.* Ex. A at 44–51.) The bankruptcy court found that in 1987, Bell, Davis, and defendant formed the BDS partnership and acquired 80% of Silver Creek, assuming Silver Creek's liabilities. (*Id.* Ex. A at 36, 47–49.) The court also found that the returns filed on behalf of Silver Creek in 1986 and 1987 "did not properly reflect the changes in ownership of the entities and as a result did not properly reflect who was liable for the various tax liabilities." (*Id.* Ex. A at 5, 50.) Accordingly, the bankruptcy court entered findings as to how the tax liabilities should have been reported. (*Id.* Ex. A at 5.) These findings corrected the amount of liability, as well as the entities and persons responsible for those liabilities, that had been reported in the returns initially filed with the IRS.[4] (*Id.*)

In light of the bankruptcy court's findings, Reece requested new returns for Silver Creek to be filed. (*Id.* ¶ 13.) These returns were all filed in the spring of 1992,

---

defendant suggests, that these assessments were made against BDS. (See Pl.'s Resp. Separate Statement Undisputed Fact ¶ 3–7.)

**3.** The court takes judicial notice of the fact that the bankruptcy court resolved this issue and made findings of fact and conclusions of law, but does not notice these findings as true. *See United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994). Many of the facts found by the bankruptcy court are in dispute in this case. Because judicially noticed facts must be accepted as true, Fed. R. Evid 201(g), taking judicial notice of all of the facts found by the bankruptcy court would have the effect of finding that defendant is collaterally estopped from litigating the factu-

al issues in this case. The United States, however, has not based its cross motion for summary judgment on a collateral estoppel theory. Therefore, it would be improper under the guise of judicial notice to accept all of the bankruptcy court's findings as true, especially when defendant was not a party to the earlier lawsuit and therefore would not be bound by it.

**4.** The findings of the bankruptcy court are admissible as non-hearsay to explain the subsequent conduct of Randy Reece in asking for new returns to be filed and in preparing new assessments for the liabilities of Silver Creek. *See* Fed.R.Evid. 801(c). They are not admissible for their truth. *See supra* at 1124–25.

and were the first Silver Creek returns to identify BDS as the taxpayer liable for the relevant tax periods. (Weill Decl. Ex. L at 5, 7–11; Jennings Decl. Ex. F–J.) They were also the first returns naming the Robert D. Davis and John L. Reisenger partnership as the employer liable for FICA taxes for the quarters ending December 31, 1986 and June 30, 1987, and FUTA taxes for the years of 1986 and 1987. (Jennings Decl. Ex. L, F, A, G.)

Reece assessed the liabilities on these returns in June and July of 1992, (*Id.* Ex. B), and later adjusted the amounts to match the findings of the bankruptcy court. (Reece Decl. ¶ 13.)

On June 1, 2001, fourteen years after the first set of assessments and nine years after the second set of assessments, the United States filed this lawsuit against defendant to collect the unpaid employment taxes.

## II. *Discussion*

The court must grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party adverse to a motion for summary judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List,* 880 F.2d 1040, 1045 (9th

Cir.1989). The non-moving party must show more than a mere "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. *Waiver of Statute of Limitations Defense*

■ The United States contends that defendant waived his statute of limitations defense by failing to raise it in a responsive pleading. A statute of limitations defense is an affirmative defense that the defendant should raise in the pleadings. *See* Fed.R.Civ.P. 8(c). "In the absence of prejudice, however, an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir.1993). The United States has not claimed prejudice, nor is any suggested by the record. Therefore, defendant may raise the statute of limitations defense in his motion for summary judgment.

### B. *Internal Revenue Code Section 6502(a)*

■ "Statutes of limitation sought to be applied to bar the rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Comm'r,* 464 U.S. 386, 391, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (quoting *E.I. Dupont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924)). Under Internal Revenue Code Section 6502(a), the government must institute a court proceeding to obtain a judgment for unpaid tax assessments within ten years after a timely assessment has been made, or prior to the expiration of any period of collection agreed upon in writing by the taxpayer and the IRS. I.R.C. § 6502(a).[5]

---

**5.** The United States and defendant have not agreed in writing to extend the collection period.

Because the United States filed this lawsuit on June 1, 2001, its claim is time-barred unless the taxes at issue were assessed after June 1, 1991. Defendant argues that the ten year limitations period expired, because it began to run after the IRS made the first set of assessments against Silver Creek in 1987 and 1990. The United States contends that the statute of limitations began to run when the second set of assessments was made in 1992. Thus, this case presents the question of when the statute of limitations begins to run where the IRS has made more than one set of assessments against a particular entity. The court concludes that a material issue of fact exists as to whether the second set of assessments triggered the running of the statute of limitations under Section 6502(a).

1. *Legal Authority*

Although there is no Ninth Circuit authority on point, the Seventh Circuit addressed the issue in this case in *United States v. Friedman*, 739 F.2d 252 (7th Cir.1984).[6] In *Friedman*, the IRS assessed taxes against an entity at two different points in time. Before the first assessment, the IRS officer in charge of the account investigated the ownership of the entity. He found that a partnership had operated the entity, but that the partners disagreed as to whether the partnership had been dissolved. Nevertheless, the IRS officer helped one of the partners

file a return on behalf of the partnership, and assessed taxes against the partnership and against the partners as individuals. Subsequently, the IRS officer sought advice from IRS legal counsel as to whether the partnership had been dissolved. When counsel advised him four years later that the partnership had been terminated, the IRS officer requested new returns to be filed reflecting the fact that the business was operated as a sole proprietorship, and made a new set of assessments accordingly. The court found that because the IRS officer did not have information sufficient to identify the correct taxpayer when the first assessment was made, the statute of limitations did not begin to run until the second assessment. *United States v. Friedman*, 739 F.2d 252 (7th Cir.1984), *rejected on an unrelated issue, Jersey Shore State Bank v. U.S.*, 479 U.S. 442, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987).

■ *Friedman* stands for the general proposition that an assessment will not trigger the statute of limitations unless the IRS has sufficient information to identify the correct employer liable for the taxes. The rule in *Friedman* makes good policy sense. If this court were to adopt a contrary proposition, the government would be faced with two unpalatable options when attempting to assess tax where the correct identity of the taxpayer is unclear. First, the IRS could choose to delay as-

---

6. Defendant is apparently under the misapprehension that *Friedman* concerns the statute of limitations provision of Section 6501. Friedman expressly states that "[t]his appeal raises the issue of whether the government's claim is barred ... [by the] statute of limitations contained in Section 6502(a)(1)." *Friedman* 739 F.2d at 253. Defendant instead relies on *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934) in support of his argument that the first set of assessments triggered the statute of limitations for collection. *Zellerbach,* however-

er, involves the statute of limitations provision in 250(d) of the Internal Revenue Act of 1921, which later evolved into section 6501 of the Internal Revenue Code. That limitations provision concerns the time in which the IRS must assess tax against a person once a return is filed. It does not address the time limitation for instituting a collection action once an assessment is made. *Zellerbach* is therefore inapposite to defendants' claim under 6502(a); the court addresses *Zellerbach* in connection with defendants' claim that Section 6501 bars the United States' suit. *See infra* at 1124–25.

sessment until it is certain of the taxpayer's identity. This option would put the government under the gun of the statute of limitations provision of Internal Revenue Code § 6501(a), which requires the government to assess tax within three years of the filing of a return. Thus, the government would have only three years after a return is filed to resolve questions of taxpayer identity.

Alternatively, the IRS could opt to assess tax immediately after a return is filed, even if it is still confused about the taxpayer's identity. In this situation, Internal Revenue Code § 6502(a) gives the government no more than ten years to determine the correct taxpayer. While this result would encourage the IRS to litigate promptly questions of the employer's identity, it would also create an incentive for a person facing potential tax liability to engage in delay tactics until the ten year limitations period had lapsed. In addition, as between the government and the taxpayer, the taxpayer is in a much better position to make clear its status as such.

Although *Friedman* articulates a sensible rule, it fails to address by what standard the government's knowledge about the taxpayer's identity is to be judged. The court concludes that an objective standard must apply.

Under a purely subjective standard, the statute of limitations for collection would not begin to run until the IRS makes an assessment with actual knowledge of the correct taxpayer's identity. This standard would have the perverse effect of rewarding unreasonable delays in determining taxpayer identity with a longer collection period. Incompetence or deliberate ignorance would suffice, under a subjective standard, to toll the statute of limitations.

An objective standard avoids this result by inquiring whether the government knew or should have known the identity of the correct taxpayer when it assessed taxes against the entity.

 Therefore, where more than one set of assessments have been made, the statute of limitations for collection must begin to run when the government makes an assessment after it knew or should have known the correct identity of the taxpayer.[7]

2. *Whether the IRS knew the correct identity of the taxpayer is a material issue of fact*

 The United States has raised a material issue of fact as to whether the IRS, and in particular revenue officer Randy Reece, actually knew that BDS was the taxpayer responsible for the Silver Creek account.

Reece states in his declaration that he was uncertain about the ownership of Silver Creek until the bankruptcy was resolved. (Reece Decl. ¶ 7.) Just as the ownership of the entity in *Friedman* changed, so the ownership of Silver Creek allegedly changed during the time periods in question. (Pl.'s Opp'n at 2.) According to Randy Reece, the purported change in ownership created confusion in his mind as to the identity of the employer. (Reece Decl. ¶ 7.) Like the IRS officer in *Friedman*, Reece had received conflicting statements from the persons involved about the identity of the employer: while Robert Davis told Reece that BDS owned and operated Silver Creek, defendant denied BDS's involvement. (*Id.* ¶ 13.) Indeed, defendant still disputes that he was a partner in BDS and that BDS owned Silver Creek. (Ste-

---

7. The court is mindful that statutes of limitations must be construed strictly in favor of the government. *Badaracco*, 464 U.S. at 391, 104 S.Ct. 756. This does not, however, require the court to interpret the statutes of limitations in a manner that unreasonably favors the government.

phens Compl. ¶ 9.) Also like the IRS officer in *Friedman*, Reece awaited a legal opinion regarding the identity of the employer before making his second set of assessments. (Reece Decl. ¶ 13.) The court in *Friedman* found these circumstances to be sufficient evidence that the IRS lacked enough information to identify the correct employer. *Friedman*, 739 F.2d at 256. Thus, Reece's declaration supports an inference that he did not know who the taxpayer really was.

Defendant argues that Reece was clear about the taxpayer's identity when the first assessments were filed because (1) Reece filed an investigation report on June 14, 1989 stating that the evidence "tends to support" the formation of BDS and defendant's liability (Weill Supp. Decl. Ex. C); (2) Reece filed lien notices against BDS and Stephens in January of 1990; (3) Reece applied for an EIN for BDS on November 2, 1990 (Weill Supp. Decl. Ex. A); and (4) Reece testified before the bankruptcy court, and made the calculations adopted by the bankruptcy court regarding BDS's liability (Weill Supp. Decl. Ex. B).

### a. *Investigation Report*

The investigation report states only that the evidence "tends to support" the conclusion that BDS is the taxpayer. As such, it reveals Reece's suspicion, not his certainty, about the identity of the employer.

### b. *Notices of Federal Tax Lein*

Defendant argues that the IRS would not have issued liens against himself and BDS in 1990 unless it knew BDS was the taxpayer when it assessed taxes against Silver Creek. However, the notices of federal tax lien are ambiguous about the tax status of BDS and Stephens. Read one way, the notices suggest the government was aware of BDS's status as a taxpayer; read another way, the notices suggest BDS was only a nominee.

The United States acknowledged during oral argument that the lien notices suggest the government knew BDS was the correct taxpayer when it made the first set of assessments. Normally, a person will not be named in a lien notice unless the government has assessed a tax against him. (Weill Decl. Ex. A.) An exception to this rule is that the government may name a nominee (a successor in interest) of the taxpayer in a lien notice without having assessed taxes against the nominee. The United States claims that BDS and Stephens were listed as nominees on the lien notices, and that therefore the government never assessed taxes against BDS. The United States also argues that to the extent BDS was named as the taxpayer in these notices, the IRS made a mistake.

A close reading of the notices reveals ambiguity about whether BDS was a taxpayer or a nominee. For example, one lien notice typical of those issued on the Silver Creek account in 1990 names "First State Charter Corporation, Trustee for Nightengale Company, as nominee, transferee and or successor in interest of ... Robert Davis and BDS, a General Partnership; as nominee, transferee and or successor in interest of ... Lawrence Stephens ... as general partner of BDS, a General Partnership; as nominee, transferee and or successor in interest of Robert Davis & BDS, a General Partnership, dba Silver Creek Construction Company ...." (Weill Decl. Ex. A).

One plausible reading of this notice is that First State Charter Corporation is a nominee of Robert Davis and BDS, who in turn are nominees of Stephens, who in turn is a nominee of the Robert Davis & BDS General Partnership. Under this reading, BDS and Stephens are nominees, not taxpayers. These facts suggest that the IRS was confused, and simply covering its bases by seeking to attach the property

of all possibly liable parties. (Reece Decl. ¶ 9: "from 1988 through 1992, I filed many different notices of federal tax lein . . . in an attempt to secure the collection of tax from all the partners.")

Another plausible reading of the above notice is that First State Charter Corporation is the only nominee; in other words, First State Charter Corporation is the nominee of Robert Davis, and BDS, and Stephens, and Robert Davis & BDS General Partnership. Under this interpretation, Stephens and BDS are identified as the taxpayers, suggesting the IRS was clear about the employer's identity when it made the first assessments. Thus, the lien notices are ambiguous about whether the IRS knew BDS was the taxpayer.

The United States conceded at oral argument that BDS appears as a taxpayer on some of these notices, but argued that Reece was so confused about the employer's identity that he made a mistake when naming BDS as a taxpayer. As Reece states in his declaration, "since I was not sure of the identity of the employer until after the bankruptcy case, I may have attached the wrong name to a particular EIN." (Reece Decl. ¶ 10). Indeed, the wrong EIN number was attached to the wrong employer name on at least one occasion. For example, on 10/5/87, the IRS assessed FICA taxes against the "Robert D. Davis and John L. Reisenger partnership" for the period ending June 30, 1987, (Weill Decl. Ex. N), despite the fact that the return filed for that period listed the EIN for Robert D. Davis's sole proprietorship. That tax return is itself ambiguous: it uses the EIN assigned to the business when it was operated as a sole proprietorship, but names "Robert D. Davis, et al., PTR" as the employer, suggesting the taxpayer is a partnership. (Jennings Decl. Ex. E.) Ultimately, whether Reece is credible in saying he was confused about the

taxpayer's identity is an issue of fact for trial.

### c. BDS's EIN and Bankruptcy Trial Calculations

Defendant also argues that Reece would not have obtained an EIN for BDS in November of 1990, or testified at the bankruptcy trial that BDS was the employer, unless Reece was certain about the employer's identity. Defendant suggests that the IRS waited until 1992 to assess taxes against BDS even though it had assigned BDS an EIN in 1990 because it wanted to extend the statute of limitations for collecting the tax.

The United States explained at oral argument that when Reece obtained the EIN for BDS, he suspected that BDS was the employer, but chose to wait for the bankruptcy court to decide the issue as a matter of comity. The IRS did not want to assess tax against BDS only to have the bankruptcy court reach the conclusion that BDS was not the correct taxpayer. Instead, the IRS deferred to the bankruptcy court to decide the issue. Opposite inferences can therefore be drawn from the fact that Reece assigned an EIN to BDS, but waited until after the bankruptcy trial to assess taxes against BDS. Which inference is correct? The answer to that question is an issue for trial.

The conflicting inferences to be drawn from the notices of lien and the fact that Reece obtained an EIN for BDS, coupled with Reece's statement that he was unclear about BDS's status until after the bankruptcy, raise a material issue of fact as to whether the IRS actually knew the correct identity of the employer when taxes were first assessed against Silver Creek.

### 3. *Whether the IRS should have known the taxpayer's identity is a material issue of fact*

Material issues of fact also exist regarding whether the government should have known BDS was the taxpayer when it made the first set of assessments. Given the alleged changes in corporate identity, the conflicting accounts about whether BDS was actually formed, and the mix-ups with the EINs, a reasonable jury could find that a reasonable revenue officer would have been confused about the identity of the employer when the first set of assessments were made. A jury could also reasonably conclude that a reasonable IRS officer would postpone the assessment of taxes until after the bankruptcy to avoid the awkward situation of having assessed a tax against someone later found to be not to be liable for it.

Because the United States has raised a material issue of fact as to whether the IRS knew or should have known the correct identity of the taxpayer, Section 6502(a) does not bar the United States' action to collect the tax, unless the second set of assessments was untimely under Section 6501(a).

### C. *Internal Revenue Code Section 6501(a)*

The government can only bring an action to collect a tax if it has made a timely assessment of the tax. I.R.C. § 6502(a). The IRS must assess a tax within three years after the return was filed. I.R.C. § 6501(a).

Defendant contends that the even if the second assessments are the relevant assessments, they were untimely under Section 6501(a) because they were made in 1992, five years after the original returns for Silver Creek were filed in 1987. The United States contends that the second set of tax returns, filed the same year the taxes were assessed, are the relevant returns.

■ A tax return will not commence the running of the three year statute of limitations unless it contains all of the data from which a tax can be computed and assessed. *Bufferd v. Comm'r*, 506 U.S. 523, 528, 113 S.Ct. 927, 122 L.Ed.2d 306 (1993); *Comm'r v. Lane–Wells Co.*, 321 U.S. 219, 224, 64 S.Ct. 511, 88 L.Ed. 684 (1944); *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934).[8]

In *Zellerbach*, the taxpayer in good faith filed a tax return that was full and accurate. Subsequently, the tax laws changed with retroactive effect, making the return filed by the taxpayer slightly defective. However, the return contained enough information so that the IRS could compute taxes as required by the new law. The taxpayer later filed a second return reporting additional taxes as required by the new tax laws. The court found that, under the circumstances, the second return was merely an amendment or supplement to the first, and therefore the first return triggered the applicable statute of limitations. *Zellerbach* 293 U.S. at 180, 55 S.Ct. 127. Significant to the court's determination was the fact that the first return contained enough information for the IRS to be able to assess taxes against the taxpayer under the new tax laws. *Id.* at 128–129.

By contrast, in *Lane–Wells*, a taxpayer filed a return in which it mistakenly failed to identify itself as a personal holding company. The IRS wanted to assess taxes against the taxpayer as a personal holding company, but the taxpayer argued that the

---

**8.** The line of cases following *Lane–Wells* has not addressed the specific issue of whether the IRS has information sufficient to make an assessment when the wrong employer is named in the return.

statute of limitations for assessment had run. The Supreme Court found that because the returns expressly denied the taxpayer's liability as a personal holding company, the return provided the government with no information on which to base an assessment. *Lane Wells,* 321 U.S. at 223, 64 S.Ct. 511. Therefore, the Court found that the return filed by the company was insufficient to commence the running of the statute of limitations. *Id.* at 224, 64 S.Ct. 511.

■ Here, a material issue of fact exists as to whether the first set of returns provided the IRS with enough information to assess taxes against BDS and the Robert D. Davis and John L. Reisenger partnership for the relevant time periods.

The returns do not name BDS or the Robert D. Davis and John L. Reisenger partnership as the employers liable for the tax periods in question. Because BDS and the Robert D. Davis and John L. Reisenger partnership are not named in these returns, a reasonable jury could find that the returns did not provide the employer with sufficient information to assess taxes against BDS.

On the other hand, for the reasons previously discussed, different inferences can be drawn from the notices of lien and the issuance of an EIN to BDS about how much the IRS knew or should have known about the identity of the taxpayer from the initial set of returns. Therefore, a material issue of fact exists as to whether the first set of returns provided the IRS with sufficient information to assess the tax liabilities the United States now seeks to collect.

### D. *Amount of Tax Liability*

The United States brings a cross motion for partial summary judgment on the amount of tax liability at issue.

■ An assessment of unpaid federal tax, when supported by some positive evidence or properly certified, is presumptively correct evidence of the taxpayer's liability and satisfies the government's burden of proof. *United States v. Janis,* 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *United States v. Stonehill,* 702 F.2d 1288, 1293–94 (9th Cir. 1983). A Certificate of Assessments and Payments is sufficient to carry the government's burden of proof that the taxpayer is liable for the unpaid taxes, penalties and interest shown on the Certificate. *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir.1992); *see also Huff v. United States,* 10 F.3d 1440, 1445–1446. Once the presumption of correctness arises, the burden shifts to the taxpayer to show that the assessment was arbitrary or erroneous. *Rapp v. Commissioner,* 774 F.2d 932, 935 (9th Cir.1985); *Stonehill,* 702 F.2d at 1294. If the taxpayer submits no evidence to contradict or challenge the accuracy of the tax assessments, judgment must be entered for the government. *See Koff v. United States,* 3 F.3d 1297, 1298 (9th Cir. 1993) (per curiam).

In this case, the United States has submitted a Certificate of Assessments and Payments for FICA and FUTA taxes for Robert D. Davis, Robert D. Davis and John L. Reisenger partnership, and Robert D. Davis and BDS partnership, dated February 2, 1995. This certificate is sufficient to establish that the assessments listed *therein* are correct. However, there is no assessment listed in the certificate that contains dollar amounts that match the amounts the United States seeks to collect in this case. Therefore, the certificate, by itself, is insufficient to presumptively establish the amounts due.

■ The only other evidence of the amount of tax liability are the findings of the bankruptcy court, upon which Reece relied in making the final set of assessments against BDS. (Reece Decl. ¶ 13.)

The bankruptcy court found that the amounts due for the periods in question were: (1) $20,245 for the quarter ending December 31, 1986; (2) $103,944 and $18,899 for the quarter ending June 30, 1987; (3) $7,416 for the quarter ending September 30, 1987; (4) $188 for the year ending December 31, 1986; and (5) $29,476 for the year ending December 31, 1987. Although the bankruptcy court's findings establish the amount of defendant's tax liability, they cannot support the United States' motion for summary judgment unless they are admissible as evidence. Fed. R. Civ. Proc. 56(e).

The United States acknowledges that the findings of the bankruptcy court are hearsay when offered for their truth, but argues that the findings are admissible as an exception to the hearsay rule under Federal Rule of Evidence 807. To fall within Rule 807's residual exception, (1) an out of court statement must have "circumstantial guarantees of trustworthiness" equivalent to those in the other hearsay exceptions; (2) the statement must be offered as evidence of material fact; (3) the statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts; (4) the general purposes of the rules of evidence and justice must be served by admitting the evidence; and (5) the proponent must give notice of intent to offer the statement sufficiently in advance of the trial or hearing to provide a fair opportunity to meet it. Fed.R.Evid. 807.

Here, the United States cannot establish the third element necessary to show that Rule 807 applies. Testimony, bank drafts, payroll records, and other evidence which can be procured through reasonable efforts are more probative on the question of who is liable for the employment taxes than the bankruptcy court findings. Indeed, most of this evidence has already been procured by the United States for purposes of litigating the bankruptcy case. Thus, evidence of the bankruptcy court findings is hearsay not within any exception, and is inadmissible for its truth. Accordingly, it cannot support an inference that the amount of tax liability claimed by the United States is presumptively correct.

Defendant, for his part, has not submitted any evidence showing that the numbers offered by the United States are incorrect. Defendant requests additional time to review recently received discovery for the purpose of identifying the correct amount of liability at issue. Counsel for defendant stated at oral argument that he would make every effort to work with the United States to fix the amount of liability before trial. In the spirit of Rule 56(f), plaintiff's motion for partial summary judgment is therefore dismissed without prejudice to its renewal after defendant has had an opportunity to review discovery on the issue of the amount of tax liability.

IT IS THEREFORE ORDERED that:

(1) Defendant's motion for summary judgment be, and the same hereby is, DENIED;

(2) Plaintiff's motion for partial summary judgment be, and the same hereby is, DENIED without prejudice.