**UNITED STATES of America,**
**Plaintiff,**

v.

**Neil Alan SCOTT, Defendant.**

**No. 02–2037–IEG(AJB).**

United States District Court,
S.D. California.

Aug. 11, 2003.

David Cheng, United States Department of Justice, Washington, DC, U.S. Attorney CV, U.S. Attorneys Office Southern District of California, San Diego, CA, for Plaintiff.

Noel W. Spaid, Law Offices of Noel W. Spaid, Del Mar, CA, for Defendant.

## ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFF'S EX PARTE APPLICATION TO FILE A SUR–REPLY; and (3) DENYING DEFENDANT'S EX PARTE REQUEST TO FILE A SECOND SUPPLEMENTAL MEMORANDUM

GONZALEZ, District Judge.

Presently before the Court is plaintiff's motion for summary judgment to reduce to judgment certain tax assessments against defendant Neil Alan Scott. Additionally, both parties have filed ex parte applications seeking leave of the Court to file additional memoranda of points and authorities. For the reasons discussed below, the Court grants plaintiff's motion and denies both ex parte applications.

### BACKGROUND

On October 16, 2002, plaintiff the United States of America (the "government") brought this action against Scott to reduce to judgment certain unpaid income tax assessments, including a civil penalty. (See Compl. at ¶¶ 1, 7 and 9.) On March 3, 2003, the government moved for summary judgment.

Unless otherwise noted, the Court finds that the following facts are undisputed.[1] The United States is seeking to collect on tax and penalty assessments for the tax

---

1. Although defendant states in an opposition to plaintiff's statement of facts that many of these facts are disputed, the Court finds that defendant's disputes, unless otherwise noted, involve the legal significance of the fact rather than a dispute about the fact itself. Accordingly, the Court finds that the facts themselves are not disputed and addresses the legal disputes in the discussion below.

years 1983 [2], 1985, 1988, 1989, 1992, 1993, 1996, 1997, and 1998. Scott did not file federal income tax returns for any of those years except for 1983, 1989, and 1992. The IRS subsequently filed substitute returns for Scott based on costs of living estimates and forms provided by third parties for those years in which Scott had not filed a return. With respect to the 1989 and 1992 tax years, defendant filed two separate Nonresident Alien Income Tax Return (1040NR) forms. Claiming to be a "Natural born free Citizen/National of Iowa," defendant inserted a "N/A" on both returns. Finding the 1992 1040NR to be substantially incorrect and frivolous, the IRS assessed a civil penalty under 26 U.S.C. § 6702 against Scott.

As of October 23, 2002, the IRS calculates the total unpaid assessments against Scott to be $104,215.12, plus interest and other additions as provided by law thereafter. Although defendant admits that he was born in Iowa, he claims in his declaration and his response to interrogatories that the IRS lacks jurisdiction over him to collect taxes.

The government filed its motion on March 3, 2003. Scott filed an opposition to the motion on April 25, 2003, and the government replied to the opposition on April 30, 2003.

## DISCUSSION

### I. APPLICABLE LAW

#### A. MOTION FOR SUMMARY JUDGMENT

Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is a question which must be answered to determine the rights of the parties under the substantive law and must be answered by the jury. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993). A dispute is "genuine" only if "a jury applying [the substantive law's] evidentiary standard could reasonably find for either the plaintiff or the defendant." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *See id.* at 322, 106 S.Ct. 2548. However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof. *See id.* at 323, 106 S.Ct. 2548. Once the moving party demonstrates that there is no genuine issue of material fact, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (*quoting* Fed. R.Civ.P. 56(e)).

**2.** Following a hearing on this motion, the government filed a "Notice of Partial Concession" in which it withdraws its claim against defendant for the 1983 tax year. Accordingly, the Court dismisses the complaint as to that claim and will not discuss that claim in the context of this motion.

## II. ANALYSIS

■ The Court must determine both whether Scott has raised genuine issues of material fact for trial and, if not, whether the government has met its burden of proof when the facts are viewed in a light favorable to Scott. In an action to collect taxes, the government bears the initial burden of proof. *Palmer v. U.S. I.R.S.*, 116 F.3d 1309, 1312 (9th Cir.1997). In meeting that burden, "[t]he Commissioner's deficiency determinations and assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation." *Id.* Here, the government asserts that the minimum ·factual foundation is provided by the Certificates of Assessments and Payments (Forms 4340) attached to the Declaration of David Cheng ("Cheng Declaration") in support of the motion for summary judgment. This presumption of correctness thus "shifts the burden of proof to the taxpayers to show that the determination is incorrect." *Id.* For example, "[a] showing by the taxpayer that a determination is arbitrary, excessive or without foundation shifts the burden of proof back to the IRS." *Id.* In *Palmer*, the court held that where the IRS reasonably employed statistics to reconstruct the plaintiffs' income, the determination was not arbitrary, excessive or without foundation. *Id.*

■ In the present case, the forms 4030 submitted by the government carry a presumption of correctness and support the government's motion. Thus, the burden shifts to Scott to show that an affirmative defense bars collection, or that the assessments are incorrect. Defendant makes arguments in each of these categories, and the Court will address them in turn.

### A. *Statute of Limitations*

■ Defendant argues that the statute of limitations bars recovery of the assessments made for the tax years 1983, 1985, 1988, and 1989. The statute of limitations before 1990 was six years after the assessment of the tax, but Congress extended the limitations period to ten years in 1990. *See* 26 U.S.C. § 6502. "[W]here more than one set of assessments have been made, the statute of limitations for collection must begin to run when the government makes an assessment after it knew or should have known the correct identity of the taxpayer." *U.S. v. Stephens*, 185 F.Supp.2d 1116, 1122 (E.D.Cal., 2001). Here, Scott claims that the government made multiple assessments of tax owed in some of the tax years, and that for the years 1985, 1988, and 1989, the first assessments make the present action time-barred. (*See* Opp'n at 2–3).

■ First, Scott argues that an assessment for the 1985 tax year was completed on March 14, 1991, and that therefore the limitations period on a collection action ran on March 14, 2001, over a year before the government filed its complaint. (*See* Opp'n at 4). However, an examination of the Form 4030 for that year indicates that the only action taken on March 14, 2001 by the government was to file a substitute return for Scott. (*See* Cheng Decl. at 87). In fact, no assessment ("0.00") was made on that date. (*Id.*).[3] In any case, the Ninth Circuit has held that a "dummy return," like the one filed in the present case by the IRS for Scott, would not be used in determining Scott's deficiency. *See Roat v. C.I.R.*, 847 F.2d 1379, 1382 (9th Cir.1988). The actual assessments for the 1985 tax year were made on October 19,

---

**3.** Because the Court finds that the entry for the substitute for return does not constitute an assessment, the Court declines to find that defendant has raised a genuine issue for trial as to which of multiple assessment dates controls for purposes of the statute of limitations.

1992. (Cheng Decl. at 87). This puts them within the limitations period of ten years since the complaint was filed on October 16, 2002. Because a reasonable jury could not find from the evidence that any assessment was made on March 14, 2001, the Court finds that Scott has failed to raise a genuine dispute as to this material fact.

■ Scott's arguments regarding the 1988 and 1989 tax years are materially the same, and they fail for the same reasons. Scott continually argues that the government admits in the Forms 4340 for tax years 1985, 1988, and 1989 that the statute of limitations had run because it lists under the date October 21, 2002 for each year the entry "statute expired—clear to zero." This argument holds no water since, as of that date, the government concedes that the statute of limitations would have run and a collection action would have been barred. However, the government filed suit in this case on October 16, 2002. If the entry Scott points to proves anything, it is that the statute of limitations would have barred the action on that date. Because the government filed suit before that date, it is immaterial.

Thus, Scott's statute of limitations affirmative defenses fail to negate the government record's presumption of correctness.

*B. Notice and Demand*

■ Scott next argues that the assessments may not be collected because the government failed to send a formal Notice and Demand to Scott within sixty days of the assessment. (*See* Opp'n at 6 *et seq.*). 26 U.S.C. § 6303(a) provides:

Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

26 U.S.C. § 6303. Scott claims that the failure of the government to make these notices and demands within the proscribed period preclude the collection of the taxes now.

■ "Official certificates, such as Form 4340, can constitute proof of the fact that the assessments actually were made." *Hughes v. U.S.*, 953 F.2d 531, 535 (9th Cir.1992). Furthermore, where a Form 4340 indicates that notice and demand were timely given, it is sufficient in the absence of contrary evidence to establish that such notice and assessment were made. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir.1993). In such a circumstance, a mere declaration on the part of the taxpayer that he did not receive a notice and demand is insufficient to raise a genuine issue of material fact as to whether such notice and demand was actually sent. *See id.*

The Court will apply this precedent to the facts of each tax year in the present case. With regard to the 1985 tax year, the Form 4340 shows that the government gave a "Statutory Notice of Balance Due" on October 19, 1992. (Cheng Decl. at 88).[4]

4. The government provides ample authority in a supplemental brief that a "Statutory Notice of Balance Due" in a Form 4340 means that a Notice and Demand for Payment was sent on that date to the taxpayer as required under 26 U.S.C. § 6303(a). (*See* Govt's Supp. Mem. at 4). Defendant concedes this point (*see* Def's Supp. Mem. at 2), but raises new concerns about the government's "Intent to Levy" notices. Specifically, defendant complains that the government has followed a flawed procedure by sending such notices of intent to levy before the actual assessments were made. Even assuming, *argendo,* that an "intent to levy" is the same as a "notice of

This was made on the same day as the assessment. (*Id.* at 87). Approximately twenty days later, the government entered a "Statutory Notice of Intent to Levy." (*Id.* at 88). These entries on the Form 4340 provide evidence that the notice and demand issued within the sixty-day time period. Scott argues that the notice of deficiency for the 1985 tax year issued on March 30, 1992.[5] (*See* Opp'n at 7). This date does not appear on the Form 4340, and Scott does not cite its source. However, it seems that Scott may be referring to an entry on the Form 4340 on March 30, 1987 for "Taxpayer Delinquency Notice." (Cheng Decl. at 88). This does not seem to be probative of anything related to the 1992 assessments since it issued more than five years earlier. Accordingly, Scott has failed to point to specific facts that rebut the government's presumptive showing that the notice and demand issued. These same facts and exact dates apply to the 1988 and 1989 tax years. (*See* Exhs. C, D to Cheng Decl.).

With respect to the tax year 1993, the form 4340 for that year indicates that the notices of balance due and intent to levy issued on July 15, 1996 and August 5, 1996, respectively, with another notice of intent to levy issuing on June 17, 2002. (Cheng Decl. at 100–101). The first two notices and demands issued on the same day as the assessment and approximately twenty-five days after, respectively. (*Id.*).

The same analysis applies to the 1996 tax year, although the dates are different. (*Compare* Opp'n at 7 *with* Cheng. Decl. at 104–105). With respect to the 1997 and 1998 tax years, the "Statutory Notice of Balance Due" was entered in both cases on the same day on which the assessments were made. (*See* Cheng. Decl. at 108–109, 112–113). The same notice was entered with regard to the 1992 tax year on the same day that the government assessed the penalty for filing a frivolous tax return. (*Id.* at 117). Scott merely asserts in his brief, without citation to any evidence, that no notice issued with respect to the 1992 tax year penalty. The case law shows that such an assertion is not enough to raise a genuine issue as to the notice when it is listed in the Form 4340. *See Hansen,* 7 F.3d at 138.

In sum, the Court finds that the Forms 4340 filed by the government provide presumptive evidence that the notice and demand issued with regard to each of the assessments still at issue. Because Scott fails to point to specific facts in evidence to rebut that presumption, his argument that the notices and demands were not timely will not preclude an entry of summary judgment for the government.

### C. Request to Continue Pending Discovery of Actual Assessments

Next, Scott urges the Court to continue consideration of the summary

---

levy," and furthermore assuming *arguendo* that the notices of intent to levy were actually sent before the assessments, the Court finds that defendant has failed to point out any specific statutory provision that would be violated by the alleged order of events.

5. Throughout Scott's chart in his opposition at 7–8, Scott refers to the "Notice of Deficiency Date." None of the dates he lists under the column appear in any of the respective Forms 4340. Scott does not provide these documents or cite his source for the dates. Although notices of deficiency for the tax years

1985, 1988, 1989, 1993, 1996, 1997, and 1998 appear in Cheng's Declaration as exhibits J and M–P, a review of these notices suggests that they are not the notices of balance due and notices of intent to levy referred to in the Forms 4340. Importantly, it appears that the notices of deficiency issue *before* any assessment is made. *See, e.g.,* Cheng. Decl. at 479 ("If you decide not to file a petition with the Tax Court, please sign and return the enclosed waiver form. This will permit us to *assess* the deficiency quickly and can help limit the accumulation of interest.") (emphasis added).

judgment motion until defendant has had an opportunity to examine the actual assessments at issue to determine whether they were actually signed and on what date they were signed. (*See* Opp'n at 9). In support of this argument, Scott cites to a case from the Fifth Circuit holding that assessments are not valid until they are signed by assessment officers. *See Brafman v. U.S.*, 384 F.2d at 863, 866–867 (5th Cir.1967). However, Scott does not address the binding authority from this circuit holding that Forms 4340, like those provided by the government in this case, provide a rebuttable presumption that assessments were actually and properly made. *See Hansen v. U.S.*, 7 F.3d at 138; *Hughes*, 953 F.2d at 535. Accordingly, the Court · finds that defendant's apparently groundless speculation that the assessments were not signed or that they carried a different date than that reported on the Forms 4340 does not warrant a continuation in this case or a denial of summary judgment.

 Similarly, Scott appears to contend that actual assessments and notice and demands were never made because a request he made to certain IRS offices for those documents under the Freedom of Information Act ("FOIA") yielded no results. (*See* Opp'n at 9–10). However, neither Scott's declaration nor the exhibits he submits in support of his declaration provide evidence in support of his statement that no assessments or notices and demand exist for these tax years. Instead, Scott merely declares that he has not received the documents he requested under FOIA. (*See* Scott Decl. at ¶¶ 6, 8). The mere assertion that his FOIA requests have not yet yielded fruit simply does not amount to a specific fact that rebuts the presumption that the notices and assessments entered into the Form 4340 were properly made.

### D. Alleged Discrepancies Between Notices of Deficiency and Assessments

 Next, Scott appears to argue that the motion should be denied because of alleged discrepancies between the adjusted income reported in notices of deficiency and that reported in assessments for the tax years 1985, 1988, 1993, and 1996. (*See* Opp'n at 10). Although the government replied to this argument, it appears to the Court that the government did not respond to the precise issue raised. (*See* Reply at 4–5). For example, Scott apparently argues that the assessment for tax year 1985 was $68,214, while the Notice of Deficiency for the same tax year states that the assessment should have been $68,806. First, the Court notes that Scott, in this and most of his other arguments, provides no citation to the record whatsoever to support his contentions. This places an undue burden on the Court to comb through the voluminous record to try to find the sources of his arguments. Second, the Court finds confounding that Scott asserts that he has information concerning the notice of deficiency for tax year 1985 when he argues in the preceding section that such a notice may not exist. Finally, the government's reply to this assertion does not mention or cite to the source of the $68,214 figure. The government follows defendant's suit and fails to provide specific, page-numbered citations to the record to show support for its argument. In the end, the Court finds Scott's assertion wholly unsupported and, even if true, apparently immaterial to any of the issues at bar. These alleged discrepancies do not provide specific facts that help defendant to rebut the presumption of correctness that attaches to the Forms 4340.

### E. The Validity of the Government's Underlying Assessments

At oral argument and again in his supplemental memorandum, defendant asserts that because at least some of the govern-

ment's assessments relied on allegedly arbitrary or unfounded assumptions about defendant's income, an issue of material fact exists that precludes the entry of summary judgment. As noted above, the government's determinations are entitled to a presumption of correctness as long as they are based on at least a minimal factual foundation. However, a taxpayer's showing that such determinations are unfounded or arbitrary shifts the burden back to the government.

Defendant points out first with regard to the 1985 tax year that the government based its assessment on $64,458 of "Non Employee Comp.," compared to $3,745 in income as established by W–2 forms. (*See* Chang Decl. at 313). This category includes "compensation received for services, including fees, commissions, tips, gratuities, and similar items." (*Id.* at 317). Defendant argues that since there is "no 1099 on file," the Court must assume that it is simply a Bureau of Labor statistical calculation, and that such a statistic must be arbitrary. (*See* Def's Supp. Mem. at 8). Without more, the Court might agree. However, defendant has either overlooked or refuses to acknowledge the government records showing entries for the very 1099–MISC forms provided by third parties that aggregate to this $64,458 figure. (*See* Chang Decl. at 323–324). Defendant has simply pushed his theory too far to argue that this figure comes from "thin air," and the Court finds that he has failed to raise a genuine issue of material fact as to its validity. Additionally, because defendant simply states that "[t]he argument is the same for the other years," the Court declines to adopt his argument as to those years as well.[6]

## CONCLUSION

 For the foregoing reasons, the Court **GRANTS** the government's motion for summary judgment. Accordingly, the Court enters judgment against defendant in the amount of $104,153.12 as of October 23, 2002, on the assessments made against him for the tax years 1985, 1988, 1989, 1992, 1993, 1996, 1997, and 1998, plus interest and other additions as provided by law thereafter. Additionally, the Court denies both the government's ex parte application to file a sur-reply, filed June 24, 2003, and defendant's ex parte application to file an additional supplemental memo, filed on June 27, 2003, since neither of these briefs conforms to the briefing schedule set forth in the Southern District of California Local Rules and no good cause appears to consider them.

**IT IS SO ORDERED.**

---

6. For example, for the 1988 tax year, defendant appears to contend that the gross receipts line item income was arbitrary or unfounded. However, a note in defendant's file establishes at least a minimum factual foundation for the calculation of these gross receipts. (*See* Chang Decl. at 374). Similarly, defendant complains there is "no back up of any kind on file" for a self-employment line item of $4,372 for the year 1996, (Def's Supp. Mem. at 9), but the defendant's file reveals that this is attributed to income from "E & A Insurance Inc." (Chang Decl. at 534). Although defendant claims there is "no back up of any kind on file" for a line item of $4329 (apparently defendant meant $4229) in the 1997 tax year, his file reveals that this is attributed to income from "E & A Ins. Marketing." (Chang Decl. at 608). The same dispute occurs as to the 1988 tax year. (*Compare* Def's Supp. Mem. at 9 *with* Chang Decl. at 657). The Court finds with regard to all of these assertions that defendant has failed to overcome the government record's presumption of validity by demonstrating that such figures are arbitrary or unfounded. Accordingly, the Court declines to find that they are "naked assessments" or that defendant has raised a genuine issue of material fact for trial.