T.C. Memo. 2015-194

UNITED STATES TAX COURT

SCOTT LABOR, LLC, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22360-12L.                    Filed September 29, 2015.

Until it ceased operations in April 2007, P was a single-member LLC owned and managed by B who, because P was a disregarded entity under the "check-a-box" regulations, reported P's results on a Schedule C, Profit or Loss From Business, included in B and his wife's joint individual income tax returns. On its Forms 941, Employer's Quarterly Federal Tax Return, filed for 2005, 2006, and the first quarter of 2007, P offset the employment taxes due with respect to its employees' wages by the advance earned income credits (AEIC) allegedly paid to those employees. Under the Combined Annual Wage Reporting program, the Social Security Administration (SSA) and the IRS compare the Forms W-2, Wage and Tax Statement, filed with the SSA, with the Forms 941, filed with the IRS. R discovered that the wages and AEIC payments that P reported on its Forms 941 for 2005 and 2006 exceeded the wages and AEIC payments it reported on its Forms W-2 for those years. A statement from its Memphis, Tennessee, Service Center reported that P filed no Forms W-2 for the first quarter of 2007.

[*2]     In April 2011, R issued a Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of levy), addressed to both P and B, in which R sought to collect (1) employment taxes for 2005 and 2006 equal to P's alleged overstatements of AEIC payments to its employees on its Forms 941 for those years and employment taxes equal to the entire amount of the AEIC offset for the first quarter of 2007, on the basis of P's alleged failure to file any Forms W-2 for that quarter, (2) interest, and (3) additions to tax under I.R.C. sec. 6651(a)(1) and (2) and I.R.C. sec. 6721(e)(2)(A) intentional disregard penalties.  P requested and received a collection due process (CDP) hearing after which IRS Appeals issued a notice of determination sustaining, in full, the notice of levy.  P filed a petition with this Court pursuant to I.R.C. sec. 6330(d)(1) alleging that (1) for all taxable periods in issue, R's collection efforts were barred because of R's failure to issue notice and demand for payment within 60 days of assessment as required by I.R.C. sec. 6303, (2) for 2005, R is barred from reducing P's Form 941 AEIC offset because that action would be inconsistent with R's not reducing P's 2005 cost of goods sold in connection with an income tax audit of B's (and Mrs. B's) 2005 return, (3) for the first quarter of 2007, P paid to its employees the AEIC reflected on its Form 941, as evidenced by a transcript from R's Kansas City, Missouri, Service Center, which indicated that P had filed some 6,000 Forms W-2 for that quarter, (4) for the first quarter of 2007, there is no basis for R's imposition of the I.R.C. sec. 6651(a)(1) addition to tax, and (5) for all taxable periods in issue, there is no basis for R's imposition of the I.R.C. sec. 6651(a)(2) additions to tax and the I.R.C. sec. 6721(e)(2)(A) intentional disregard penalties.  P also argues that, because its underlying liabilities for some of the taxable periods are at issue, we must review all aspects of the case under a de novo standard of review, including whether the Appeals officer at the CDP hearing complied with the I.R.C. sec. 6330(c)(1) requirement to verify R's compliance with "any applicable law or administrative procedure" and, in particular, with I.R.C. sec. 6303.

1. Held: We have jurisdiction to decide this case even though the notice of determination was mailed to and the case was instituted in the name of P, a defunct, disregarded entity.

2. Held, further, the standard of review issue as applied to the Appeals officer's compliance with I.R.C. sec. 6330(c)(1) is moot because, as a matter of law, the April 2011 notice of levy satisfied the requirement of I.R.C. sec. 6303 to issue notice and demand before instituting collection procedures.

3. Held, further, R timely assessed and timely instituted collection procedures with respect to the taxes, additions to tax, and penalties at issue herein.

4. Held, further, P has carried its burden of proving that it issued and filed Forms W-2 for the first quarter of 2007.

5. Held, further, even assuming that R's not reducing P's cost of goods sold for 2005 would be inconsistent with a reduction in P's 2005 AEIC offset, that reduction is permissible because R is not bound by the results of the prior income tax audit of 2005.

6. Held, further, IRS Appeals' determination to proceed with collection by levy of R's employment tax assessments for 2005 and 2006 is sustained.

7. Held, further, IRS Appeals' determination to proceed with the collection of the I.R.C. sec. 6651(a)(1) addition to tax for the first quarter of 2007 is rejected.

8. Held, further, IRS Appeals' determination to proceed with collection by levy of the I.R.C. sec. 6651(a)(2) additions to tax and the I.R.C. sec. 6721(e)(2)(A) intentional disregard penalties for all taxable periods in issue is rejected.

**[\*4]**  <u>Allen H. Shapiro</u>, for petitioner.

<u>Kathryn E. Kelly</u>, <u>Alexander R. Roche</u>, and <u>Julie A. Schwoebel</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, <u>Judge</u>:  This case is before the Court to review a determination by the Internal Revenue Service (IRS) Appeals Office (Appeals) following a collection due process (CDP) hearing conducted pursuant to section 6330(b) and (c).[1]  Appeals determined that respondent may proceed to collect by levy petitioner's unpaid employment taxes resulting from overstated advance earned income credits (AEIC) for 2005, 2006, and the first quarter of 2007, plus additions to tax, penalties, and interest.  We review Appeals' determination pursuant to section 6330(d)(1).  Petitioner assigns error to Appeals' determination on the grounds that (1) for all of the 2005-07 quarterly tax periods in issue, collection by levy of unpaid taxes, additions to tax and penalties is untimely due to respondent's failures to give proper notice of the amount due and to demand payment, pursuant

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) of 1986, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

**[*5]** to section 6303, within the three-year limitations period of section 6501(a); (2) respondent is barred from reducing petitioner's 2005 AEIC because an income tax audit of the 2005 joint individual income tax return filed by petitioner's sole shareholder, Scott Borre, and Mrs. Borre (incorporating petitioner's results on a Schedule C, Profit or Loss From Business, because of petitioner's status as a disregarded entity under sections 301.7701-2(c)(2)(i) and 301.7701-3(b)(1)(ii), Proced. & Admin. Regs.[2]) made no change to the Borres' 2005 cost of goods sold deduction, which included the AEIC reflected on petitioner's 2005 Forms 941, Employer's Quarterly Federal Tax Return; (3) for the first quarter of 2007, petitioner filed Forms W-2, Wage and Tax Statement, which support the AEIC reflected on its Form 941 for that quarterly tax period, so that no additional amount is due; (4) for the first quarter of 2007, there is no basis for respondent's imposition of the section 6651(a)(1) addition to tax for failure to timely file a tax return; and (5) for all of the quarterly tax periods in issue, there is no basis for respondent's imposition of either the section 6651(a)(2) additions to tax for

---

[2]For employment taxes related to wages paid on or after January 1, 2009 (not this case), a disregarded entity is not disregarded and is treated as a corporation for purposes of employment tax reporting and liability. Sec. 301.7701-2(c)(2)(iv), Proced. & Admin. Regs., T.D. 9356, 2007-2 C.B. 675.

**[*6]** nonpayment of tax shown on the returns or the section 6721(e)(2)(A)

intentional disregard penalties.

## FINDINGS OF FACT[3]

Some facts are stipulated and are so found. The stipulation of facts, with

accompanying exhibits, is incorporated herein by this reference.

Petitioner, having ceased operations and vacated its Chicago, Illinois, place

of business in April 2007, was no longer in existence when the petition was filed

on its behalf on September 12, 2012. At that time, Mr. Borre resided in Highland

Park, Illinois.[4]

---

[3]Petitioner objects to only 10 of respondent's 88 proposed findings of fact. Respondent objects to all but 8 of petitioner's 25 proposed findings of fact. To the extent that either party fails to object to the other's proposed findings of fact, we conclude that they are correct except insofar as any such proposed findings are without evidentiary support in the record or are clearly inconsistent with evidence in the record, or the nonobjecting party's proposed findings of fact are clearly inconsistent therewith. See, e.g., Topsnik v. Commissioner, 143 T.C. 240, 243 n.4 (2014).

[4]The parties have stipulated: "Petitioner in this case is Scott Labor, LLC." Nevertheless, because Mr. Borre was the sole shareholder of a disregarded entity, which, under the applicable regulations, is treated as a single taxpayer for Federal tax purposes, see, e.g., Med. Practice Solutions, LLC v. Commissioner, 132 T.C. 125, 127 (2009), aff'd without published opinion sub nom. Britton v. Shulman, 2010 WL 3565790 (1st Cir. 2010), and because, as discussed infra, this case involves the redetermination of Mr. Borre's tax liability, it would appear that Mr. Borre's Highland Park, Illinois, residence would determine the venue for any appeal of this case pursuant to sec. 7482(b)(1)(A), which provides: "[I]n the case

(continued...)

**[*7]** <u>Background</u>

Petitioner was a temporary-labor employment agency. It was a single-member limited liability company owned and managed by Mr. Borre. Its place of business was 6050 South Pulaski Road, Chicago, Illinois (Pulaski Road address or premises), at all relevant times until it ceased operations and closed on April 10, 2007. Mr. Borre resides (and, at all relevant times, resided) in Highland Park, Illinois.

---

[4](...continued)
of a petitioner seeking redetermination of tax liability other than a corporation, [proper venue is determined by] the legal residence of the petitioner". (Compare <u>Byers v. Commissioner</u>, 740 F.3d 668, 673-677 (D.C. Cir. 2014), aff'g T.C. Memo. 2012-27, in which the Court of Appeals for the District of Columbia Circuit held that venue for all CDP cases <u>not</u> involving a redetermination of tax liability is that court, barring the parties' stipulation to the contrary, pursuant to sec. 7482(b)(1) (flush language) and (2)). Alternatively, should the focus be on the defunct petitioner LLC for purposes of determining appellate venue, it is arguable that, because (1) an LLC has a principal place of business (not a legal residence) and (2) this case did not commence with a "petition under section 6226, 6228(a), 6247, or 6252", sec. 7482(b)(1)(E), neither subpara. (A) nor subpara. (E) of sec. 7482(b)(1) (nor any other lettered subparagraph of para. (1)) applies, and the flush language of sec. 7482(b)(1) would appear to make the Court of Appeals for the District of Columbia Circuit the appellate venue, again, barring the parties' stipulation to the contrary. As the issue of appellate venue does not relate to our jurisdiction and is, properly, an issue to be resolved at the Court of Appeals level, we need not and do not address it. <u>See</u> <u>Brewin v. Commissioner</u>, 72 T.C. 1055, 1059 (1979) ("[W]e acknowledge the obvious fact that our view on * * * [proper appellate venue] is not determinative."), <u>rev'd and remanded on another issue</u>, 639 F.2d 805 (D.C. Cir. 1981).

**[*8]** When petitioner ceased operations on April 10, 2007, its customer lists and general intangibles relating thereto were sold by its creditor, Capital Tempfunds, to Personnel Services Group, LLC. Petitioner abandoned its lease at that time, and neither petitioner nor Mr. Borre retained possession of the Pulaski Road premises thereafter.

Petitioner's Forms 941 and W-2 for the Quarterly Tax Periods in Issue and Respondent's Adjustments to the AEIC Claimed Thereon

2005

Petitioner timely filed its Forms 941 for three of the four 2005 quarterly tax periods; it delinquently filed its Form 941 for the third quarter on November 10, 2005. On those Forms 941, petitioner reported employment taxes of $217,867, $233,167, $272,988, and $408,182 for the first through fourth quarters of 2005, respectively, which respondent assessed on June 27, September 12, and December 12, 2005, and April 10, 2006, respectively. On its 2005 quarterly Forms 941, petitioner offset the employment taxes due by the following AEIC amounts for the first through fourth quarters, respectively: $95,275, $77,537, $109,096, and $142,701, for total claimed AEIC of $424,609 for 2005.

Petitioner filed 2005 Forms W-2 reporting $4,406,558 of taxable Social Security wages and $325,247 of AEIC. Petitioner's Forms 941 for 2005 reported

[*9] total taxable Social Security wages of $6,789,815, which was $2,383,257 more than the $4,406,558 it reported on its 2005 Forms W-2. Correspondingly, the $424,609 of AEIC petitioner reported on its 2005 Forms 941 was $99,363 more than the $325,247 it reported on its 2005 Forms W-2. On September 8, 2008, respondent disallowed $99,363 of the $142,701 of AEIC that petitioner claimed for the fourth quarter of 2005, which resulted in a $99,363 underpayment of petitioner's 2005 employment taxes.

### 2006

Petitioner timely filed its Forms 941 for the four 2006 quarterly tax periods. On those Forms 941, petitioner reported employment taxes of $191,774, $311,624, $496,740, and $489,706 for those quarters, respectively, which respondent assessed on July 17, September 4, and December 11, 2006, and March 12, 2007, respectively. On its 2006 quarterly Forms 941, petitioner offset the employment taxes due by the following AEIC amounts for the first through fourth quarters, respectively: $82,095, $99,827, $170,923, and $169,875, for total claimed AEIC of $522,720.

Petitioner filed 2006 Forms W-2 reporting $8,540,822 of taxable Social Security wages and $502,182 of AEIC. Petitioner's Forms 941 for 2006 reported total taxable Social Security wages of $8,583,001, which was $42,179 more than

[*10] the $8,540,822 it reported on the 2006 Forms W-2. Correspondingly, the $522,720 of AEIC petitioner reported on its 2006 Forms 941 was $20,538 more than the $502,182 it reported on its 2006 Forms W-2. On January 4, 2010, respondent disallowed $20,538 of the $169,875 of AEIC that petitioner claimed for the fourth quarter of 2006, which resulted in a $20,538 underpayment of petitioner's 2006 employment taxes.

2007

On August 3, 2007, petitioner delinquently filed its Form 941 for the quarterly tax period ending March 31, 2007. Petitioner reported employment taxes of $204,888 on that Form 941, which respondent assessed on September 3, 2007. On that Form 941, petitioner offset the employment taxes due by alleged AEIC payments of $64,183. Petitioner also reported on that Form 941 total taxable Social Security wages of $1,180,885. On the grounds that petitioner failed to file any Forms W-2 reflecting any AEIC payments to employees for the first quarter of 2007, respondent, on February 7, 2011, disallowed the entire $64,183 of AEIC offsets that petitioner reported on its Form 941 for that quarterly tax period, which resulted in a $64,183 underpayment of employment taxes for the period.

All of petitioner's Forms 941 filed for the quarterly tax periods in issue listed the Pulaski Road address as petitioner's address.

**[\*11]** <u>Additions to Tax and Penalties</u>

Respondent assessed an $11,553 late-filing addition to tax under section 6651(a)(1) for the first quarter of 2007 based upon the $64,183 underpayment for that quarterly tax period. Respondent also assessed failure-to-pay timely additions to tax under section 6651(a)(2) based upon the alleged underpayments of $99,363, $20,538, and $64,183 in employment taxes for 2005, 2006, and the first quarter of 2007, respectively. Lastly, respondent assessed 10% intentional disregard penalties under section 6721(e)(2)(A), for all quarterly tax periods, for "Failure to File W-2s".[5]

<u>The Notice of Levy and Request for a Hearing</u>

On April 4, 2011, respondent sent by certified mail a "Final Notice--Notice of Intent To Levy and Notice of Your Right To A Hearing" (notice of levy). The notice of levy was addressed to both petitioner and Mr. Borre at Mr. Borre's home in Highland Park, Illinois. The notice of levy listed amounts of employment taxes

_____

[5]Pursuant to sec. 6721(e)(2)(A), the penalties generally are "10 percent of the aggregate amount of the items required to be reported correctly". For 2005, respondent intended that to be 10% of the $2,383,257 of allegedly underreported Form W-2 wages for that year. This would result in a $238,326 penalty, not the $20,681 penalty actually assessed. Respondent recognizes his error in assessing the lower amount but acknowledges and concedes "that the statute of limitations has expired to assess the proper penalty." The penalty amounts that respondent assessed for 2006 and the first quarter of 2007 are, in fact, 10% of allegedly unreported Form W-2 wages for those quarterly tax periods.

**[*12]** and penalties (described as "Unpaid Amount from Prior Notices") for all of the quarterly tax periods in issue, an "Additional Penalty" amount for the first quarter of 2007, and "Additional Interest" for all quarterly tax periods, totaling an "Amount You Owe" of $445,726. It advised that the listed amounts remained unpaid despite prior requests "to pay the tax", and it described the letter as "your notice of our intent to levy * * * and your right to request an Appeals hearing (under IRC section 6330(a))." It demanded "full payment today to prevent additional collection action", explained the requirements for making payment, warned of additional penalty and interest charges if payment were to be further delayed, advised the addressees of their right to request an Appeals hearing, and enclosed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, advising that the Form 12153 had to be completed, signed, and returned to the sender's address within 30 days from the date of the notice of levy to preserve the addressees' right "to contest an Appeals' decision in the U.S. Tax Court."

On April 29, 2011, petitioner, listing Mr. Borre's home address as its address, filed a Form 12153 requesting a CDP hearing. The request erroneously described itself as a request for an equivalent hearing, and it indicated an intent to discuss collection alternatives, specifically, offer-in-compromise and inability to

[*13] pay the amount due.  It also contained the following statement:  "Unable to determine composition of proposed penalty.  Also, I would like to propose a different way to pay the money I owe.  Also, I am not liable for all or part of the taxes."

The CDP Hearing and Notice of Determination

On January 10, 2012, petitioner, through its authorized representatives, and Appeals Officer Patricia J. McCormick (sometimes, Appeals officer) participated in a face-to-face CDP hearing.  That hearing and subsequent discussions between Ms. McCormick and petitioner's representatives concerned respondent's compliance with relevant procedural requirements and petitioner's liability for the assessed amounts.  Among other things, petitioner's representatives told Ms. McCormick that the first collection notice that the taxpayer had received was the notice of levy and that any prior computer-generated notice and demand likely had been sent to a wrong address.  Contrary to the intent expressed in the request for hearing, petitioner's representatives did not offer any collection alternatives.  They argued that the taxpayer (presumably, Mr. Borre) should not be held responsible for any 2007 liabilities since he "was gone from [the] business 12/31/2006":  He "walked away from the business and some of the people he was working with took it over."

[*14] On August 10, 2012, Appeals issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (sometimes, notice) to petitioner. The notice is addressed to petitioner at "7301 W 25th St 309, Riverside IL 60546" (Riverside address).[6] The notice sustains the proposed levy. In an attachment to the notice prepared by Ms. McCormick, she states that she verified that "the requirements of any applicable law, regulation or administrative procedure * * * have been met", consistent with the mandate of section 6330(c)(1) for a CDP hearing. She further states: "Computer records indicate that the notice and demand, notice of intent to levy and/or notice of federal tax lien filing, and notice of a right to Collection Due Process hearing were issued." She also states that the "assessment was properly made per IRC § 6201" for all relevant taxable periods and that a "notice and demand for payment letter was mailed to the taxpayer's last known address, within 60 days of the assessment, as required by IRC § 6303." With respect to petitioner's Forms W-2 for the years in issue, she states:

> The W-2 records were requested from the Service Center's database. W-2s were sent by the Internal Revenue Service Center for years 2005 and 2006. Unfortunately, since there were over 6,000

---

[6]In her "case activity report", Ms. McCormick indicates that the Riverside address may have been petitioner's bookkeeper's address, used as a default address after petitioner ceased operations and abandoned the Pulaski Road address.

[*15] W-2s issued for 2007, it was too voluminous for the Service Center to print.  The W-2s for 2005 and 2006 were reviewed.  Many of the W-2s showed either incorrect or missing social security numbers.  * * *

Ms. McCormick testified that she had queried the IRS Integrated Data Retrieval System (IDRS), asking for data from 2007 Forms W-2 filed by petitioner and that she had received a response from the IRS Memphis Service Center referencing the IRS "Payer Master File on Line" and stating that "there were no payer documents posted to the PMF [payer master file] for TY2007".  She concluded from that response that she had asked with respect to the wrong service center, and she testified that she then queried the IRS Kansas City Service Center regarding petitioner's 2007 Forms W-2.  She received a response from Kansas City referencing the IRS "Information Returns Master File" and stating that her request for a transcript was not processed because "the transcript would have been over 2,000 pages", too many to print out.  Petitioner is identified by its taxpayer identification number (TIN) in each report.  Ms. McCormick testified that she could not reconcile the inconsistent reporting by the two service centers for 2007 with their consistent reporting as to Forms W-2 filed by petitioner for 2006.

**[*16]** <u>Prior Audit of Mr. Borre's 2003-05 Returns</u>

Respondent audited Mr. and Mrs. Borre's 2003-05 jointly filed Forms 1040, U.S. Individual Income Tax Return (2003-05 income tax audit). That audit resulted in no change for 2003 and various adjustments for 2004 and 2005.

During the course of the 2003-05 income tax audit, the agent, Michael Hershman, issued an information document request (IDR) to the Borres in which he noted the discrepancy between petitioner's wage payments as reflected on its 2005 Forms 941, $6,789,815, and the wages reported on petitioner's 2005 Form W-3, Transmittal of Wage and Tax Statements, $4,406,558. Both of those amounts differ from the cost of labor set forth on the Schedule C computation of the Borres' 2005 cost of goods sold, $6,465,653. Nonetheless, Mr. Hershman made no adjustment in his examination report with respect to the Borres' 2005 cost of goods sold computation.

The audit concluded with respondent's and the Borres' execution of Forms 4549, Income Tax Examination Changes, one for 2003 and one for 2004 and 2005, on which the Borres consented to the assessment and collection of the proposed 2004 and 2005 deficiencies.

[*17] Prior Section 6721(e)(2)(A) Penalties

Respondent in January 2007 assessed a 10% section 6721(e)(2)(A) intentional disregard penalty against petitioner for its failure to file correct Forms W-2 for its 2003 taxable year. The failure apparently arose from petitioner's failure to report wages from one department of its business.

OPINION

I.   Levies and CDP Hearings

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) requires that the Secretary give at least 30 days' written notice to the taxpayer of his intent to levy, and section 6330(a) requires the Secretary to send the taxpayer written notice of his right to a hearing before Appeals at least 30 days before any levy begins.

If the taxpayer requests a hearing in response to a notice of levy, he may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy", including challenges to the appropriateness of the levy and collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A). He may also challenge the existence or amount of the underlying tax liability if he did not receive a statutory notice of deficiency for such tax

**[\*18]** liability or did not otherwise have an opportunity to dispute the tax liability. See sec. 6330(c)(2)(B).

Following the hearing, the Appeals officer conducting the hearing must determine whether the collection action is to proceed, taking into account his verification of the Secretary's compliance with "the requirements of any applicable law or administrative procedure", the issues raised by the taxpayer at the hearing, and whether the collection action "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c). As stated, we have jurisdiction to review such determinations. See sec. 6330(d)(1).

Where the underlying tax liability is properly at issue, we review the determination de novo. E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for abuse of discretion. Id. at 182. In reviewing for abuse of discretion, we must uphold the Appeals officer's determination unless it is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

**[*19]** II.    Jurisdiction

Because petitioner was a disregarded entity for Federal tax purposes under sections 301.7701-2(c)(2)(i) and 301.7701-3(b)(1)(ii), Proced. & Admin. Regs., it is arguable that the petitioner herein should be Mr. Borre, who reported petitioner's results on a Schedule C attached to his and Mrs. Borre's joint Forms 1040 for 2005-07.  Correspondingly, it is arguable that, because the notice was addressed and mailed to petitioner instead of to Mr. Borre, it was invalid and may not serve as a basis for our jurisdiction pursuant to section 6330(d)(1).

We have disposed of these types of jurisdictional issues in prior cases.  In Med. Practice Solutions LLC v. Commissioner, 132 T.C. 125, 127 (2009), aff'd without published opinion sub nom. Britton v. Shulman, 2010 WL 3565790 (1st Cir. 2010), we concluded that, for purposes of that case (wherein all notices were addressed to either the disregarded LLC or to the individual sole member), "under * * * [the check-a-box] regulations, the LLC and its sole member are a single taxpayer or person to whom notice is given."  Therefore, we rejected the taxpayer's challenge to our jurisdiction, which was based on the fact that no notice of determination was sent to the individual sole member.  Id.  We reiterated that position in Bergdale v. Commissioner, T.C. Memo. 2014-152, at *6, and further concluded that sending the notice of determination to the disregarded LLC rather

**[\*20]** than to the LLC's sole member was "harmless error because (1) petitioner was notified of the filing of the NFTL and the specific employment tax liabilities covered by the NFTL, (2) petitioner requested and was granted two CDP hearings, and (3) petitioner timely petitioned this Court for review of the notice of determination."[7]

In this case, the notice of levy was sent to both petitioner and Mr. Borre at the latter's home address. The notice of determination was sent to petitioner at the Riverside address, and petitioner timely petitioned this Court for review of the notice of determination. Neither the parties' treatment of petitioner as the delinquent taxpayer subject to levy action and as the taxpayer in this litigation nor the mailing of the notice of determination to an arguably incorrect address appears to have prejudiced Mr. Borre in any way. He received the notice of determination, and he chose to have Scott Labor, LLC, petition the Court for review thereof. Therefore, consistent with our conclusion in Bergdale, we find that both the failure to consistently treat petitioner as a disregarded entity under the check-a-box regulations and the mailing of the notice of determination to an incorrect address

---

[7]Both Med. Practice Solutions and Bergdale, like this case, concerned the Commissioner's attempt to collect unpaid employment taxes.

**[\*21]** constituted harmless error. We conclude that we have jurisdiction to rule on the merits of Appeals' notice of determination.[8]

III.    Standard of Review

Petitioner did not receive a notice of employment tax deficiency and has not otherwise had an opportunity to dispute its tax liability for the years in issue. Therefore, it is entitled to de novo review of its underlying tax liability to the extent that it is in dispute. Respondent conceded at trial that "this is a de novo tax liability review. We've agreed that we're reviewing the tax de novo." Respondent argues on brief, however, that the Appeals officer's compliance with the verification requirements of section 6330(c)(1) is nonetheless reviewable for abuse of discretion, citing Jones v. Commissioner, 338 F.3d 463, 466 (5th Cir. 2003), and Meyer v. Commissioner, T.C. Memo. 2013-268, at \*11-\*12.

---

[8]Both Med. Practice Solutions and Bergdale indicate that either the individual sole member of the disregarded LLC or the disregarded LLC itself may be the petitioner in a case before this Court. In the former case, the petition was originally filed in the names of both the individual sole member and the disregarded LLC but was later "corrected on order of the Court to be consistent with the notice of determination"; i.e., the caption was modified to read "Medical Practice Solutions, LLC, Carolyn Britton, Sole Member, Petitioner(s) v. Commissioner of Internal Revenue, Respondent". See Med. Practice Solutions, LLC v. Commissioner, 132 T.C. at 127. In the latter, the petitioner was the individual sole member of the disregarded LLC. Our acceptance of more than one approach illustrates that the identity of the named petitioner in a case involving a disregarded entity is of no consequence and does not raise any jurisdictional (or proper caption) issues.

**[\*22]** The court in <u>Jones v. Commissioner</u>, 338 F.3d at 466, stated that it "reviews the underlying liability <u>de novo</u> and reviews the other administrative determinations for an abuse of discretion", citing our decision in <u>Craig v. Commissioner</u>, 119 T.C. 252, 260 (2002), wherein we stated: "The Court reviews a taxpayer's liability under the de novo standard where the validity of the underlying tax liability is at issue. The Court reviews the other administrative determinations for abuse of discretion." In <u>Meyer v. Commissioner</u>, at \*11-\*12, we described the rule as follows: "Where the validity of the underlying tax liability is not at issue, we review the Appeals officer's determination--including the verification that 'the requirements of any applicable law or administrative procedure have been met'--for abuse of discretion." The conditional nature of our formulation might suggest that the abuse of discretion standard applies to administrative determinations <u>only</u> when the validity of the underlying liability is not at issue. That is petitioner's view. Petitioner finds support for that view in <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000) (cited in <u>Meyer</u>), in which, relying on the legislative history accompanying the enactment of section 6330, we stated: "Accordingly, where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will

[*23] review the Commissioner's administrative determination for abuse of discretion."  Petitioner, in essence, argues that where, as here, the underlying tax liability is at issue, then, under Sego, "the matter" (i.e., the Appeals officer's overall determination) is entitled to de novo review.

While it might appear that petitioner's argument does not pertain to 2006 because petitioner's counsel conceded at the conclusion of the trial that petitioner does not challenge the underlying tax liability for that year, petitioner still challenges the addition to tax and penalty for 2006 (part of the underlying liability).

For all three years in issue, petitioner argues that the limitations period under section 6501(a) for assessing and collecting the liabilities at issue has expired.  That argument is based upon respondent's alleged failure to issue notice and demand for payment of tax due pursuant to section 6303 before the expiration of the foregoing limitations period, which petitioner argues is three years from the return filing dates.

Ms. McCormick states in the attachment to the notice of determination that her verification that notice and demand had been properly issued was based on IRS computer records.  Her statement that the notice and demand was mailed within 60 days of assessment to petitioner's last known address, presumably, was

[*24] also based on a computer listing of that address. At trial, respondent's counsel stated that "when assessments are made of * * * [the type involved in this case] then a notice and demand is computer generated automatically." He acknowledged, however, that there is "no physical evidence" to support the conclusion that that had occurred or that, if it had occurred, that the notice and demand, in fact, had been mailed to an address at which Mr. Borre was likely to have received it. On the basis of computer-generated "account transcripts" for 2005-07, which listed the Riverside address as petitioner's address, it is likely that any computer-generated notice and demand would have been mailed to that address and that Mr. Borre would have been unlikely to have received it.

Normally, we would be reluctant to conclude that an Appeals officer has abused his or her discretion by relying on IRS computer records to verify that timely notice and demand had been mailed to the taxpayer's last known address. We have repeatedly held that it was not an abuse of discretion for the Appeals officer to have relied on computer-generated transcripts for purposes of complying with section 6330(c)(1). See, e.g., Howard v. Commissioner T.C. Memo. 2002-81, 2002 WL 467239, at *3; Kuglin v. Commissioner, T.C. Memo. 2002-51, 2002 WL 264918, at *2. In this case, however, petitioner's representatives at the CDP hearing advised Ms. McCormick of the likelihood that the computer-generated

[*25] address (the Riverside address) to which any computer-generated notice and demand most likely would have been sent was never petitioner's address and of the fact that the first notice that either petitioner or Mr. Borre received was the notice of levy. In applying an abuse of discretion standard of review, we would be inclined to find that Ms. McCormick's receipt of that information made it unwise (i.e., an abuse of discretion) for her to rely solely on computer transcripts for her conclusion that notice and demand had been mailed to petitioner's last known address within 60 days of the assessments for 2005-07. Moreover, under a de novo standard of review, we would most likely reject that conclusion as contrary to the weight of the evidence. Thus, were it necessary to decide whether to sustain Ms. McCormick's finding of compliance with the literal terms of section 6303, the standard by which we did so (abuse of discretion or de novo) would not matter, and we would not have to address the bifurcation of standards issue raised by the parties. It is not necessary, however, to address that issue for another reason, namely because, for the reasons discussed infra, we find as a matter of law that the acknowledged mailing of the notice of levy to petitioner and Mr. Borre at the latter's home address in April 2011 provided the requisite notice and demand under section 6303.

[*26] IV.  <u>Whether Petitioner Incurred Employment Tax Liabilities for Overstating Its AEIC Deductions for the Quarterly Tax Periods in Issue</u>

A.  <u>The Advance Earned Income Credit</u>

Before it was repealed, effective for tax years beginning after December 31, 2010, section 3507 permitted employees to convert the earned income credit provided by section 32 into increased wages by filing a Form W-5, Earned Income Credit Advance Payment Certificate, with their employers.  The employer was then required to make an additional payment with each payment of wages to the employee.  The additional payment, called the "earned income advance amount", was determined from an IRS-provided table.  The employer recovered those payments by making a corresponding reduction of its payroll taxes otherwise payable to the Government.  Employers reported their AEIC payments to employees on Form 941.

B.  <u>Parties' Arguments</u>

1.  <u>Petitioner</u>

As noted <u>supra</u>, petitioner argues that section 6501(a) bars respondent's assessment or collection of any taxes, additions to tax, or penalties for the years in issue because respondent failed to send petitioner a valid notice and demand, pursuant to section 6303, within the three-year limitations period provided by

[*27] section 6501(a). For 2005, petitioner also argues that the fact that respondent did not, in connection with the 2003-05 income tax audit, make any adjustment to its cost of goods sold as reported on a Schedule C that was part of the Borres' 2005 joint return, precludes respondent from finding petitioner liable for additional employment taxes for 2005 on the basis of allegedly overstated AEIC payments to its employees for that year.[9] For the first quarter of 2007 petitioner disputes respondent's disallowance of the entirety of its claimed AEIC offset for that tax period and argues that there should be no employment tax deficiency for 2007. That argument is based upon a response from respondent's Kansas City Service Center to the Appeals officer's request for the 2007 Forms W-2 filed by petitioner, which states: "This request was not processed. The transcript would have been over 2,000 pages". The parties assume those 2,000

---

[9]A reduction in petitioner's AEIC payments to its employees for any period necessarily reduces its reported cost of goods sold for the same period, which, in turn, increases its income or profit for the period. Because the 2003-05 income tax audit did not result in increased Schedule C income for the Borres' 2005 taxable year (as there was no downward adjustment in petitioner's reported cost of goods sold for that year), petitioner argues respondent is barred from reducing petitioner's 2005 AEIC payments (which necessarily would result in a corresponding reduction in petitioner's reported cost of goods sold) because that adjustment would be inconsistent with the results of the agreed income tax audit for that year.

[*28] pages represent some 6,000 Forms W-2, which would appear to support petitioner's deduction for AEIC payments.

## 2. Respondent

Respondent argues that the Appeals officer was entitled to rely on IRS computer-generated transcripts in concluding that a notice of unpaid tax and demand for payment, with respect to each taxable period in issue, was issued to petitioner at its last known address within 60 days of assessment, in conformance with section 6303. Alternatively, respondent argues: "In any event, the Final Notice issued to Borre on April 4, 2011 provided sufficient notice under I.R.C. § 6303 for the collection action to proceed." Respondent's argument that he provided proper notice and demand to petitioner in accordance with section 6303 is, in essence, a refutation of petitioner's statute of limitations argument.

With respect to petitioner's preclusion argument for 2005, respondent argues that he is not bound by positions taken with respect to the Borres in a prior audit. Respondent further argues that Mr. Hershman's prior audit did not involve an audit of petitioner's 2005 Forms 941 and that "[a]ny determinations made by * * * [Mr. Hershman] with respect to Borre's personal income tax liability are irrelevant to * * * [his] disallowance of the AEIC claimed on petitioner's Form 941s for the 2005 tax year."

**[*29]** On the basis of a statement from respondent's Memphis Service Center

alleging that no Forms W-2 for petitioner were posted to the payer master file for

2007, respondent argues that petitioner did not file any Forms W-2 with the Social

Security Administration (SSA) for that year.[10] Therefore, respondent argues that

petitioner is not entitled to any of its claimed AEIC for the first quarter of 2007.

In reaching that result, respondent argues that Ms. McCormick's conclusion that

over 6,000 Forms W-2 had been filed for 2007 "was based on her

misinterpretation at trial of IRS transcripts and should be disregarded."

C.    Analysis

1.    Introduction

For 2005 and 2006, all of respondent's adjustments to petitioner's

employment tax liabilities are attributable to reductions in petitioner's AEIC equal

to the excess of the AEIC reflected on petitioner's Forms 941 for those years over

the AEIC reflected on petitioner's Forms W-2 for those years. Respondent's

disallowance of all of the AEIC reflected on petitioner's Form 941 for the first

quarter of 2007 is based upon respondent's conclusion that petitioner did not file

---

[10]Although a Form W-2 for 2007 was prepared for Mr. Borre as an employee of petitioner's, the record is inconclusive as to whether that Form W-2 was reported to the SSA or to respondent. In any event, Mr. Borre's Form W-2 for 2007 shows no payment to him of AEIC.

**[*30]** any Forms W-2 for that quarter and, therefore, is unable to demonstrate that it paid any AEIC during that time.

For 2005 and 2006, respondent does not reduce the employee wages reflected on petitioner's Forms 941 to conform to the lesser amounts of wages reflected on the Forms W-2 that petitioner filed for those years. Such an adjustment would have been consistent with his reduction of petitioner's AEIC reflected on the Forms 941 to the amounts reflected on the Forms W-2, but it also would have resulted in reduced 2005 and 2006 employment tax liabilities, which may be why no such adjustment was made. Thus, for 2005 and 2006, we confront the anomalous circumstance of respondent's accepting as accurate the wages, but not the AEIC, reflected on petitioner's Forms 941, and, conversely, accepting as accurate the AEIC, but not the wages, reflected on petitioner's Forms W-2.[11] Curiously, petitioner has not objected to respondent's inconsistent position, and it has not argued that if the AEIC reflected on its Forms W-2 is to be adopted as

---

[11]Because the record in this case includes Forms 941 only for the fourth quarters of 2005 and 2006, we cannot verify, on a quarter-by-quarter basis, that the wage amounts to which respondent has made no adjustment are the total wages reflected on petitioner's Forms 941 for those two years. Nonetheless, we are satisfied that petitioner did, in fact, compute its 2005 and 2006 employment tax liabilities on the basis of the total wages reflected on the four Forms 941 petitioner filed for each of those years because IRS transcripts that are in the trial record clearly indicate that to be the case.

[*31] accurate, so too should the wages reflected on those Forms W-2. As a result, we find that petitioner has conceded the accuracy of the wage amounts reflected on its Forms 941 for 2005 and 2006, and contests only respondent's adjustments to the AEIC reflected on those returns.

### 2. Petitioner's Statute of Limitations Argument

To begin with, it appears that petitioner has confused the section 6501(a) limitations period on assessment (generally, three years after the return is filed) with the section 6502(a)(1) limitations period on collection after assessment (generally, 10 years after assessment). In this case, respondent assessed the employment taxes shown on the Forms 941 that petitioner filed for the taxable periods in issue well within the three-year periods following the filing of those returns. Moreover, respondent initiated collection of the alleged employment tax underpayments with service of the notice of levy on April 4, 2011, which was well within 10 years of the earliest of those assessments (June 27, 2005, for the first quarter of 2005).

Although articulated as a defense based upon the expiration of the section 6501(a) limitations period, petitioner's argument regarding respondent's alleged failure to timely initiate collection in this case is really an argument that the notice of levy was not a timely notice and demand for payment because it was not issued

**[*32]** within 60 days of any of respondent's assessments as required by section 6303. We disagree with petitioner.

Section 6303(a) provides in relevant part that "the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." Section 301.6303-1(a), Proced. & Admin. Regs., reiterates that the notice "shall be given as soon as possible and within 60 days", but then states: "However, the failure to give notice within 60 days does not invalidate the notice." Petitioner has not challenged the validity of the foregoing regulation, which was adopted substantially in its present form and approved on December 30, 1954, effective January 1, 1955. See T.D. 6119, 1955-1 C.B. 145, 158, 195. Moreover, in several cases, without expressly addressing the effect of the Commissioner's failure to give notice within 60 days of assessment, this Court has treated notice that was provided more than 60 days after assessment (in some cases, many years after assessment) as satisfying, in whole or in part, the notice requirement of section 6303(a). See Perez v. Commissioner, T.C. Memo. 2002-274; Hack v. Commissioner, T.C. Memo. 2002-244; Hack v. Commissioner, T.C. Memo. 2002-243; Mudd v. Commissioner, T.C. Memo. 2002-204.

**[*33]** It is also significant that the Court of Appeals for the Seventh Circuit, the court to which an appeal of this case would most likely lie (on the basis of Mr. Borre's residence), has held that violation of the 60-day rule does not, in itself, invalidate an otherwise valid notice and demand. See United States v. Friedman, 739 F.2d 252, 256 (7th Cir. 1984). In that case, the notice and demand was sent several months before the assessment. Id. at 255. The court stated that the taxpayer's receipt of "actual written notice of its potential liability shortly before the assessment, including the amount of that liability", was sufficient to alleviate any concern that the taxpayer would not be "fully protected". Id. at 256. On the basis of the above-cited regulation negating the mandatory application of the 60-day rule, the court concluded: "Thus, it is clear that section 6303 is to be given a practical and not technical construction." Id. Moreover, that same court has held that a notice of levy constitutes "all the notice and demand that the statute requires or that the practicalities of administering the federal tax laws permit." Stevens v. United States, 49 F.3d 331, 336 (7th Cir. 1995); see also Conway v. Commissioner, 137 T.C. 209, 216 (2011) ("The levy notice here did provide Nakano with all the information required under the statute because it listed the type and amount of unpaid tax for each tax period, [and] explicitly demanded payment[.]"), aff'd sub nom. Nakano v. Commissioner, 552 F. App'x 724 (9th Cir.

**[\*34]** 2014). The notice of levy herein satisfied both of those requirements. Therefore, it constituted a valid notice and demand under section 6303.

We hold that the assessment and collection actions with respect to the liabilities at issue herein were timely and were procedurally valid as a matter of law.

### 3. 2005

We reject petitioner's argument that the fact that respondent did not make any adjustment to petitioner's cost of goods sold, as reported on a Schedule C attached to the Borres' 2005 joint individual income tax return, precludes his disallowance of allegedly overstated AEIC payments to its employees for 2005. Ignoring the fact that we are concerned here with allegedly underreported employment taxes for 2005 whereas the prior audit involved the Borres' 2005 income tax liability, and assuming arguendo that an employment tax adjustment for 2005 based upon overstated AEIC payments would be inconsistent with respondent's not reducing petitioner's cost of goods sold as reported on the 2005 Schedule C incorporating petitioner's 2005 results, we find that petitioner's preclusion argument must fail.

As noted supra, the 2003-05 income tax audit ended with the parties' execution of two Forms 4549, one for 2003 and one for 2004 and 2005, pursuant

**[*35]** to which the Borres consented to assessment and collection of the agreed-upon deficiencies. It is clear, however, that a taxpayer's consent to assessment of additional tax is without binding effect on the Commissioner insofar as the determination of the correct amount of tax liability is concerned. See Estate of Smith v. Commissioner, 57 T.C. 650, 656 (1972), aff'd, 510 F.2d 479 (2d Cir. 1975), and Findlay v. Commissioner, 39 T.C. 580, 588-589 (1962), aff'd in part, rev'd in part on other issues, 332 F.2d 620 (2d Cir. 1964), both of which make clear that no document short of a formal compromise or closing agreement that meets the requirements of section 7121 will preclude the Commissioner from asserting an additional liability for a previously audited tax year. Moreover, that principle holds true even though the Commissioner may have purported to "accept" the prior determination. See Hudock v. Commissioner, 65 T.C. 351, 362-364 (1975), in which neither the parties' execution of a Form 4549 and the Commissioner's acceptance of a check in payment of the additional tax computed on that Form nor the doctrine of equitable estoppel was deemed to preclude the Commissioner's assessment and collection of additional deficiencies for the tax year in issue. Thus, even if we assume that respondent's proposed adjustment to petitioner's 2005 AEIC payments is tantamount to a finding that petitioner overstated its cost of goods sold for that year, inconsistent with Mr. Hershman's

**[*36]** not making any adjustment to petitioner's 2005 cost of goods sold, respondent is not precluded by the execution of the Form 4549 from making that adjustment.

Other than its statute of limitations/section 6303 argument, as it applies to 2005, and its preclusion argument with respect to that year, both of which we reject, petitioner does not contest its tax liability arising from overstated AEIC payments for 2005. Therefore, we find petitioner liable for the assessed 2005 employment tax deficiency.

 4. 2007

As noted supra, the parties' dispute concerning petitioner's entitlement to the AEIC offset reflected on its Form 941 for the first quarter of 2007 centers upon two conflicting statements from two different IRS Service Centers, one of which supports petitioner's entitlement to the AEIC offset and one of which supports respondent's denial of the offset.

There is no satisfactory explanation in the record as to why a statement from the Kansas City Service Center confirms petitioner's filing of some 6,000 Forms W-2 for the first quarter of 2007 whereas a statement from the Memphis Service Center confirms, in effect, that petitioner filed no Forms W-2 for that quarter. Both statements reference the same TIN, and there is no dispute that that TIN

[*37] belongs to petitioner. During the trial, Ms. McCormick attempted to explain the discrepancy between the two statements by testifying that the Memphis Service Center was the "wrong" service center for the Form W-2 information. She assumed that to be the case because of the lack of any Form W-2 postings at that service center. On the basis of that assumption, she requested the statement from the Kansas City Service Center, which she deemed to be the "right" service center, and she agreed, on the basis of that statement, that petitioner probably had filed Forms W-2 for the first quarter of 2007. Under cross-examination, however, when respondent's counsel pointed out to her that, for 2006, the two service centers provided "the same information" regarding petitioner's Form W-2 filings, she was at a loss to explain why that was not also true for 2007. When asked whether she wished "to correct or change" her prior testimony that the Memphis Service Center was the "wrong" service center, she replied: "Yes, I guess, I don't know why they're [the two statements for 2007] different."[12]

---

[12]When asked by petitioner's counsel, on redirect examination, whether the listing of the (incorrect) Riverside address for petitioner on the Memphis Service Center statement, rather than the Pulaski Road address set forth on the Form 941 for 2007, would have had any impact on the "printout from * * * [that] Service Center", Ms. McCormick replied: "It shouldn't, but I can't say for sure." We do not consider that testimony to compromise her earlier testimony that she has no explanation for the inconsistency between the two service center statements. Moreover, we do not consider the listing of an incorrect address to be significant

(continued...)

[*38] The burden of proof with respect to factual issues pertaining to petitioner's liability for additional employment taxes for the quarterly tax periods in issue is on petitioner. See Rule 142(a).[13] The parties appear to agree that the assessed employment tax liability for the first quarter of 2007 is sustainable, or not, in its entirety on the basis of which of the two conflicting service center statements accurately reflects petitioner's Form W-2 filings for that taxable period. Mr. Borre testified that petitioner had a substantial number of employees during that taxable period. He also testified that his normal practice was to have petitioner's bookkeeper meet with his accountant or with members of his accountant's firm "to make sure we are following all the ordinances and * * * state laws and all the regulations and all that stuff." While we believe Mr. Borre that that was his normal practice, there is no evidence that those meetings uniformly resulted in the desired compliance and, in particular, petitioner's filing Forms W-2 for its employees for 2007. Indeed, during the course of petitioner's CDP hearing with

---

[12](...continued)
in the light of the fact that both statements showed petitioner's TIN.

[13]Sec. 7491(a), which, under certain circumstances, shifts the burden of proof on factual issues to the Commissioner, applies only to factual issues "relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B" of the Internal Revenue Code. Sec. 7491(a)(1). The employment taxes at issue herein are imposed under subtitle C. Therefore, sec. 7491(a) is inapplicable in this case.

[*39] Ms. McCormick, its representatives argued that it should not be liable for the 2007 liabilities since Mr. Borre had walked away from the business at the end of 2006 and some of the people he worked with had taken it over.  That gives us no confidence that practices continued in their normal manner in 2007.  Moreover, it appears that Mr. Borre and his counsel were either unable or unwilling to produce retained copies of any Forms W-2 furnished to employees for 2007 or to obtain testimony from any of those (former) employees that petitioner, in fact, had sent to them Forms W-2 for 2007 and made AEIC payments to them during the first quarter of that year.

Respondent's assessments for all of the taxable periods in issue, based upon overstated AEIC, were made pursuant to the Combined Annual Wage Reporting (CAWR) program created by the Commissioner and the SSA "to ensure that employers paid and reported the proper amount of taxes and federal withholding." Internal Revenue Manual (IRM) pt. 4.19.4.1(2) (Apr. 10, 2014).[14]  That task is accomplished by comparing the information reported on various IRS information returns filed with the SSA, including Forms W-2, with that reported on Forms 941

[14]"The IRM is the primary, official source of instructions to employees relating to the organization, administration and operation of the IRS.  The IRM contains directions for employees to carry out their responsibilities in administering IRS obligations."  Internal Revenue Manual (IRM) pt. 1.11.6.3 (Apr. 17, 2014).

[*40] and similar forms filed with the Commisioner.  See id. pt. 4.19.4.2 (Apr. 15, 2015).  At least one bankruptcy court has permitted a debtor to successfully challenge a CAWR adjustment where the debtor was able to produce persuasive evidence that that computer-generated adjustment was incorrect.  See In re Howard Indus., Inc., 225 B.R. 388, 392 (Bankr. S.D. Ohio 1997).  We might have done the same for the first quarter of 2007 had petitioner come forward with such evidence, but it has not.

Under the circumstances, the only credible evidence pertaining to petitioner's issuance (or nonissuance) of Forms W-2 (and, derivatively, of its having made, or not made, the AEIC payments reflected on its Form 941 for the first quarter of 2007) resides in the inconsistent service center statements.  As noted supra, there is no basis in the record for finding one more persuasive or more reliable than the other.  That is because neither party has made any attempt to explain that inconsistency, each being content to rely solely upon the service center statement supporting its (his) position.  Respondent, whose personnel created and administer the IRS information retrieval systems, did not see fit to introduce either the testimony of an individual or documentation capable of providing a satisfactory explanation; and petitioner's counsel appears to have made no effort to initiate discovery of IRS personnel and IRS internal documents that

**[*41]** might have done so.  Thus, it has been left to the Court to try to obtain information that might shed light on which, if either, of the two service center statements is the more reliable.

To begin with, we note that the Kansas City Service Center statement alleging petitioner's filing of "over 2,000 pages" of Forms W-2 is based upon information taken from the IRS "Information Returns Master File (IRMF) Transcript for TY 2007 Cycle".  IRM pt. 11.4.2.7.11 - Information Returns Master File (IRMF) (May 19, 2014) states:

> (1) **Source of Data**:  The IRMF extract contains data from the Information Returns Master File (IRMF) which is a database containing all information returns transcribed by IRS.  It contains data about both the payer (filer) as well as data about the payee (recipient of income) from various forms including Form 1099, Form 1098, Schedule K-1, and Form W-2/W-2G.

It, thus, appears that IRMF extracts routinely describe an employer's Form W-2 filings for a given quarter.

The Memphis Service Center statement, reporting "no * * * [petitioner] documents posted to the PMF for TY2007", was based upon information supplied by the IRS "Payer Master File on Line (PMFOL)", which is described in IRM pt. 4.75.12.6.2(1) (Dec. 20, 2004) as "a research tool, which provides information

**[\*42]** from Payer Master File (PMF) at Martinsburg Computing Center (MCC)."[15]

IRM pt. 4.22.6.1.1(2) (Nov. 15, 2012) also describes PMFOL as a command code

that "Displays Payer Master File information such as whether the entity filed W-2s

and/or 1099s." Finally, IRM pt. 4.22.2.2.2.4 (Oct. 1, 2002) states, in pertinent

part:

1. PMFOL provides information from the Payer Master File (PMF) at MCC. The summary screen shows all sources and amounts of income and withholdings, and the number of payment documents (Form 1099's, W-2's, etc.) filed by the payer as shown on Form 1096 transmittal.

The foregoing reference to information in the Form 1096, Annual Summary

and Transmittal of U.S. Information Returns, is reiterated in IRM pt.

20.1.7.1.4.1.1.1 (July 15, 2011), which identifies the IDRS command code

"PMFOL" and which states: "CC 'PMFOL' provides a summary of a filer's

submissions by return type for the five most recent tax years as well as a complete

record of each Form 1096 filed for all five years." The last two quoted IRM

excerpts, the former promulgated in 2002 and the latter in 2011, imply that

PMFOL provides information with respect to a payer's information returns listed

---

[15]The parties have for the most part referred to data from the Memphis Service Center and not the Martinsburg Computing Center. We do not think that the identities of the sources of the admittedly conflicting reports about petitioner's 2007 Form W-2 filing is important, and we will continue to refer to the Memphis and the Kansas City Service Centers as the sources of that data.

[*43] on the Form 1096. The only type of Form W-2 listed on the Form 1096 for 2002, 2011, and, most significantly, 2007 is the Form W-2G, Certain Gambling Winnings, not a form that would have been filed by petitioner for the first quarter of 2007. Thus, the IRM is, at best, ambiguous regarding the types of information returns filed by payors that are retrievable under PMFOL. The implied limitation to information returns that are to be filed with the Form 1096, which does not include Form W-2, is inconsistent with the blanket statement, quoted supra, that PMFOL "Displays Payer Master File information such as whether the entity filed W-2s and/or 1099s."[16]

We find that the ambiguity regarding a user's ability to retrieve a payer-taxpayer's Form W-2 filing information under PMFOL makes the Memphis Service Center statement reporting no Form W-2 filings for petitioner ("no payer documents posted to the PMF") for TY 2007 less reliable that the Kansas City Service Center statement, which attests to a transcript of Form W-2 filings by

---

[16]To add to the confusion, IRM pt. 2.3.53.6 - Screen Display of Payer Document Data (Jan. 30, 2013), which lists "the Form 1096 data that is displayed for all Payer Documents", includes in that list "W-2 - Form(s) W-3 filed to report and transmit Forms W-2,Wage and Tax Statement." That inclusion is plainly at odds with the Form 1096 itself, which does not include Forms W-2 in the list of forms to be transmitted therewith. Moreover, the inclusion is accompanied by a "Note" stating that "the only W-2 information posted to the Payer Master File are those accounts where the W-3 resulted in a Civil Penalty assessment being generated by PMF processing." That is not our case.

**[*44]** petitioner of "over 2,000 pages." In other words, on the basis of the foregoing IRM excerpts, it appears ever so slightly more likely than not that (1) petitioner did, in fact, file Forms W-2 for its employees for the first quarter of 2007, (2) those filings were reflected in the IRMF transcript for 2007 upon which the Kansas City Service Center relied, and (3) petitioner's Form W-2 filings for that quarter were not picked up by PMFOL upon which the Memphis Service Center relied. It may be that other portions of the IRM clarify the ambiguity regarding the posting for Form W-2 filings under PMFOL, but we have not found them, nor have the parties attempted to assist the Court in that regard or shown that they even are aware of the possible ambiguity.

On the basis of the foregoing, and taking into account the parties' apparent agreement that the assessed employment tax liability for the first quarter of 2007 is sustainable, or not, in its entirety according to which of the two conflicting service center statements accurately reflects petitioner's Form W-2 filings for the first quarter of 2007, we find that petitioner is not liable for the assessed employment tax deficiency for that quarter.[17]

---

[17]In contrast to respondent's argument herein that petitioner failed to file any Forms W-2 for 2007 and, for that reason, was not entitled to any AEIC offset for the first quarter of that year, the notice of determination specifically acknowledges, on the basis of "W-2 records * * * from the Service Center's

(continued...)

**[*45]** V.     Section 6651(a) Additions to Tax

   A.     Introduction

Respondent determined additions to tax pursuant to section 6651(a)(1) and (2). Respondent has the burden of production with respect to those additions to tax. See sec. 7491(c). To meet that burden, respondent must produce evidence that the additions to tax are appropriate. See id.; Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

      1.     Section 6651(a)(1)

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extensions of time for filing) unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition is equal to 5% of the amount required

---

[17](...continued)
database", that "there were over 6,000 W-2s issued for 2007". Presumably, that conclusion was based upon Ms. McCormicks' belief, at the time, that the Kansas City Service Center's statement contained the correct information regarding petitioner's Form W-2 filings for 2007. Despite that belief, she, nonetheless (apparently on the basis of her finding of "numerous incorrect W-2[s] through the years"), sustained both the tax and intentional disregard penalty assessments for the first quarter of 2007. Because, for 2007, petitioner's underlying liability for employment taxes and the penalty are at issue, and because Appeals' determination with respect thereto is subject to de novo review, we may make, and have made, our own findings of fact relating to that issue, and we ignore the Appeals officer's findings of fact, which constituted the basis for her sustaining respondent's assessments for 2007.

[*46] to be shown as tax on the delinquent tax return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent. That amount is reduced "by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return". Sec. 6651(b)(1).

Petitioner was required to file its Form 941 for the first quarter of 2007 on or before April 30, 2007, the last day of the month following the end of the quarter. See sec. 31.6071(a)-1(a)(1), Employment Tax Regs. Petitioner filed its Form 941 for that period on August 3, 2007.[18] Nevertheless, we have found that there was no employment tax deficiency for that quarter. Respondent does not argue that, if there was no deficiency in tax, payments were not made timely, which we assume they were. Therefore section 6651(b)(1) forecloses any addition to tax, and we sustain none.

2. Section 6651(a)(2)

Section 6651(a)(2) provides for an addition to tax for failure to timely pay "the amount shown as tax on any return specified in paragraph (1)" unless the

_____

[18]While petitioner filed its Form 941 late for the third quarter of 2005, respondent does not argue on account thereof for a sec. 6651(a)(1) addition to tax, and we determine none.

**[\*47]** taxpayer establishes that the failure was due to reasonable cause and not due to willful neglect. The addition is 0.5% of the amount shown as tax on the return, but not paid, for each month or fraction thereof during which the failure to pay continues, up to a maximum of 25% for a delinquency of 50 months or more. The amount is reduced "by the amount of any part of the tax which is paid on or before the beginning of such month and by the amount of any credit against the tax which may be claimed on the return". Sec. 6651(b)(2).

Respondent has computed the section 6651(a)(2) additions to tax on the basis of petitioner's employment tax underpayments for 2005-07 (which, except for 2007, we have sustained herein): $99,363 and $20,538 for 2005 and 2006, respectively. He has applied the maximum 25%, rate reasoning that it is more than 50 months since April 30, 2007, the date on which the last of the underpaid amounts (for the first quarter of 2007) was due. Thus, he argues that petitioner is liable for section 6651(a)(2) additions to tax of $24,841 and $5,135 for 2005 and 2006, respectively. Respondent then argues that petitioner "has not shown that the failure to pay was due to reasonable cause and not due to willful neglect." Petitioner objects to respondent's application of the section 6651(a)(2) additions to tax, in part, on the ground that respondent computed the additions on the basis of a failure to pay the "<u>additional</u> tax resulting from the disallowance of AEIC's for

[*48] each respective year", i.e., on the employment tax underpayments, rather than on the basis of a failure to pay the tax shown on the return as required by section 6651(a)(2).

For all of the taxable periods in issue, respondent does not dispute that petitioner timely paid the amounts shown as deposits on the Forms 941 that it filed.  Respondent argues, and we agree, that petitioner overstated the credits it claimed for AEIC payments, and that gave rise to underpayments.  On that basis we sustain respondent's imposition of the section 6651(a)(2) additions to tax for 2005 and 2006.

VI.    Section 6721(e)(2)(A) Intentional Disregard Penalties

    A.    Introduction

Respondent seeks to impose 10% intentional disregard penalties under section 6721(e)(2)(A) (penalty) for all of the taxable periods in issue.  That provision, in conjunction with section 6721(a)(2), provides, in effect, that, in the case of a return other than a return required under certain specified Code sections, none of which pertain to the requirement to issue and file Forms W-2 with respect to wages paid to a taxpayer's employees,[19] any failure to timely file an information

_____

[19]The requirement to report employee wages on a Form W-2 is in regulations issued under sec. 6041(a), which is not one of the Code sections

(continued...)

[*49] return or to include all of the information required to be shown on the return

that is due to intentional disregard of the requirement to do so is subject to a

penalty equal to the greater of $100 or "10 percent of the aggregate amount of the

items required to be reported correctly".

Respondent argues that the penalties apply against petitioner on the ground

that it filed "incorrect Forms W-2" and that its failure to file correct Forms W-2

was due to intentional disregard of the requirement to correctly report the items on

the Form W-2.

B.     2005 and 2006

For 2005 and 2006, respondent focuses on the excess of the total employee

wages shown on petitioner's Forms 941 over total employee wages shown on its

Forms W-2 filed with the SSA.  He argues that the penalties should be 10% of that

excess:  for 2005, 10% of $2,383,257, or $238,326, and for 2006, 10% of $42,179,

or $4,218.[20]  Thus, for 2005 and 2006, respondent's imposition of the penalties is

---

[19](...continued)
excluded from the application of sec. 6721(e)(2)(A).  See sec. 1.6041-2(a), Income
Tax Regs.  See also sec. 301.6721-1(g)(1) and (2)(i), Proced. & Admin. Regs.,
providing that a Form W-2 is an "information return" for purposes of sec. 6721.

[20]As noted supra note 5, for 2005, respondent mistakenly assessed a penalty
of $20,681.  He acknowledges that he is barred from increasing that penalty to the
correct amount because of the expiration of the sec. 6501(a) three-year limitations
period on assessments for 2005.  See id.

**[*50]** premised on the assumption that petitioner's Forms 941 for 2005 and 2006 accurately set forth the wages paid to its employees for those years, and, to the extent the Forms W-2 that petitioner filed for those years reported lesser amounts of wages, either they were incorrect or there were additional Forms W-2 that petitioner should have filed. As noted <u>supra</u>, petitioner, by its failure to challenge respondent's assumption that the Forms 941 accurately reflected petitioner's wage payments for the taxable periods in issue, has, in effect, conceded the truth of that assumption. Therefore, the issue for 2005 and 2006 is whether petitioner's failure to file Forms W-2 reflecting the greater wage payments set forth on its Forms 941 was due to intentional disregard of the requirement to do so.

Pursuant to section 301.6721-1(f)(2), Proced. & Admin. Regs., "[a] failure is due to intentional disregard if it is a knowing or willful--(i) [f]ailure to file timely, or (ii) [f]ailure to include correct information. * * * [Such failure] is determined on the basis of all the facts and circumstances in the particular case." Pursuant to section 301.6721-1(f)(3), Proced. & Admin. Regs., as relevant to this case, the facts and circumstances to be considered include, whether the failure "is part of a pattern of conduct * * * [by the information return filer] of repeatedly failing to file timely or repeatedly failing to include correct information". Other potentially applicable factors, such as whether the return filer corrected his failures

**[\*51]** "promptly" upon discovery or within 30 days after a written request to do so by respondent, do not appear to apply to petitioner. As discussed supra, any section 6303 notices and demands that may have been sent to petitioner shortly after assessment were most likely sent to the Riverside address, giving credence to petitioner's argument that it was not made aware of any employment tax underpayments until receipt of the April 2011 notice of intent to levy, more than four years after the last quarter in issue. Moreover, we find that petitioner's exercise of its statutory right, under section 6330, to challenge the notice of levy was not a violation of the requirement promptly to "correct[ ]" the Form W-2 filings or to make additional filings. See sec. 301.6721-1(f)(3)(ii), Proced. & Admin. Regs.

Also, we agree with petitioner that the single prior assessment of the intentional disregard penalty for 2003, to which petitioner acquiesced, does not establish "a pattern of conduct * * * of repeatedly failing to file timely or repeatedly failing to include correct information", within the meaning of section 301.6721-1(f)(3)(i), Proced. & Admin. Regs., especially in the light of the fact that the 2003 failure apparently was due to petitioner's inadvertent omission of wages from one department.

**[\*52]** There is no evidence in the record that would account for the discrepancy between the wages reflected on petitioner's 2005 and 2006 Forms 941 and the wages reflected on the Forms W-2 that it filed for those years. As noted supra, Mr. Borre testified that his normal practice was to have his accountant, or members of his accountant's firm, meet with petitioner's bookkeeper to make sure that petitioner would comply with all legal requirements. We have no reason to disbelieve that testimony. Under the circumstances, we hold that respondent has not carried his burden, under section 7491(c), to produce evidence that it is appropriate to apply the intentional disregard penalties against petitioner for 2005 and 2006. We are not persuaded that petitioner's incorrect (or omitted) Forms W-2 were not the product of inadvertence. See Lefcourt v. United States, 125 F.3d 79, 83 (2d Cir. 1997) ("Thus, in our view, the 'intentional disregard' set forth in § 6721's penalty provision means conduct that is willful, a term which in this context requires * * * that a party act voluntarily in withholding requested information, rather than accidentally or unconsciously.").

Petitioner is not liable for the penalties for 2005 and 2006.

C.    2007

Respondent argues that petitioner is liable for the section 6721(e) intentional disregard penalty for 2007 because it filed no Forms W-2 for that year.

[*53] Because we have found that petitioner is not liable for the assessed employment tax deficiency for the first quarter of 2007, it necessarily follows that petitioner did not fail to file all of the Forms W-2 that it was required to file for that quarter and, because respondent has not shown to the contrary, that those Forms W-2 satisfied the correct information reporting requirement.  See sec. 6721(a)(2), (e).  Therefore, petitioner is not liable for the section 6721(e)(2)(A) intentional disregard penalty for 2007.

Decision will be entered under

Rule 155.